UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**SHOOT THE MOON, LLC**,

Case No. **15-60979-11**

Debtor.

# MEMORANDUM OF DECISION

At Butte in said District this 12th day of April, 2016.

In this Chapter 11 case, lessor/creditor Prime A Investments, LLC (hereinafter "Prime")

filed a "Motion to Compel Assumption or Rejection of Leases, for Allowance of Administrative

Claim, and to Compel Payment of Administrative Rent" (Document No. 154) ("Motion to

Compel") on December 16, 2015. Prime's Motion to Compel seeks, in addition to compelling

the Trustee to assume or reject leases,[1] an Order compelling immediate payment of

administrative rent by the Trustee to Prime in the amount of at least $59,329 pursuant to 11

U.S.C. §§ 365(d)(3) and 503(b)(1)(a) under two leases of nonresidential real property entered

into between Prime as landlord and Shoot the Moon, LLC, as tenant in the Gateway Marketplace

("Gateway") in Meridian, Idaho. The Chapter 11 Trustee Jeremiah J. Foster ("Foster" or

"Trustee") filed an objection (Doc. 165) and requested more time to assume or reject the leases

---

[1] The lease for the OTB premises has since been rejected by the Trustee.

1

based on the disarray of Debtor's financial records. The Trustee contended that the amount of back rent is unknown and that requiring the Trustee to immediately pay back rent will cause harm to the estate and to other creditors and interested parties.

The parties entered into a stipulation resolving part of Prime's Motion to Compel; the Court held a hearing on the remaining issues at Great Falls on March 11, 2016. Attorneys Ryan D. O'Dea of Shulman Hodges & Bastian LLP, of Irvine, California, and Doug James of Moulton Bellingham PC, of Billings, Montana, represented Prime at the hearing. Attorney Trent N. Baker of Datsopoulos, MacDonald & Lind, P.C., of Missoula, Montana represented the Trustee. No testimony or exhibits were admitted. The Court heard argument from counsel, then took Prime's Motion to Compel under advisement. After review of Prime's Motion to Compel and the Trustee's objection, the record and applicable law, this matter is ready for decision. Based on the plain language of § 365(d)(3) that the Trustee "timely perform" all obligations of the debtor under any lease of nonresidential real property, and controlling Ninth Circuit decisions, the Trustee's objection is overruled and Prime's Motion to Compel immediate payment of rent under § 365(d)(3) in the amount of $83,600 will be granted by separate Order.

This Court has exclusive jurisdiction of this Chapter 11 bankruptcy under 28 U.S.C. § 1334(a). Prime's Motion to Compel is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (M).

## BACKGROUND FACTS and PROCEDURAL HISTORY

Other than the amount of past-due postpetition rent owing under one of the two leases, little dispute exists about the material facts pertaining to Prime's Motion to Compel. The Debtor Shoot the Moon, LLC, owned and operated several restaurants through approximately 18 or 20

2

separate limited liability companies in Boise and Meridian, Idaho, and Great Falls, Montana, under the names of On the Border ("OTB") and Moonshine Grill and Chili's Grill and Bar ("Chili's"). The Debtor entered into two shopping center leases of nonresidential real property from Prime for premises located in the Gateway Marketplace in Meridian for a Chili's and an OTB. Debtor closed the OTB restaurant subject to Prime's lease, but kept operating the Chili's under the lease.

Prior to filing a bankruptcy petition, the separate limited liability companies were merged into the Debtor Shoot the Moon, LLC. The Debtor filed its voluntary Chapter 11 bankruptcy petition on October 21, 2015. On October 28, 2015, the Office of United States Trustee ("UST") filed a motion to appoint Foster as conditional Chapter 11 Trustee, which the Court granted. The Court appointed Foster, as Trustee, without condition on November 5, 2015.

On October 28, 2016, the Trustee filed a motion seeking emergency interim authority for postpetition financing from Western Alliance Bank. That motion states that the estate lacked funds for operating expenses and working capital to carry on business operations from cash collateral or unsecured credit. The Court held a hearing on that emergency motion on October 30, 2015, after which an order was entered granting emergency interim postpetition financing, with a final hearing on the emergency motion scheduled for December 4, 2015. The emergency motion for interim postpetition financing was granted on a final basis after the hearing on December 4, 2015. No objections were filed and no appearances were made in opposition at the hearing. The order granting final approval of postpetition financing (Doc. 135) repeated the estate's lack of operating funds from cash collateral or unsecured financing; a loan of $150,000 from the bank was approved with super-priority status.

3

Prime filed its Motion to Compel on December 16, 2015, seeking an order compelling the Trustee to assume or reject the two leases in the Gateway Marketplace, for allowance of unpaid rent as an administrative claim under § 503(b)(1)(A), and to compel immediate payment of the rent in the minimum amount of $59,329 under § 365(d)(3).  The Trustee filed his objection on December 30, 2015, combined with a motion to extend the deadline by which the Debtor must assume or reject the two leases.  The Trustee's objection states that the Debtor closed the OTB restaurant in the Gateway Marketplace prior to the filing of the bankruptcy petition, but that it remains subject to the lease with Prime.  Describing the "complete disarray" of Debtor's books, the Trustee's objection states that he cannot accurately determine the financial status of the restaurant obligations, the amounts of the various lease obligations owing or amount of cash the Debtor has available to pay the leases.  Citing decisions mostly from other circuits, the Trustee requested an additional 90 days to determine which leases to assume or reject and to renegotiate leases.  The Trustee contended that to compel immediate decisions on whether to assume or reject the leases with Prime and to pay unknown amounts of back rent will cause harm to the estate, other creditors and interested parties.

On January 4, 2016, the Trustee filed a separate motion under § 365(d)(4)(B)(I) for an additional 90 days for Debtor to assume or reject the leases from Prime, for the same reasons set forth in the Trustee's objection.  The Official Committee of Unsecured Creditors filed a joinder in the Trustee's motion.

On January 13, 2016, Prime filed its reply in opposition to Debtor's motion for an additional 90 days, based on § 365(d)(3).  Prime argued that the Trustee presented no evidence in support of his motion to extend the deadline, and that no safeguards are provided to Prime to

4

compensate for the risk of nonpayment.  Prime's reply repeats the request for not less than $59,329 in unpaid rent and to compel immediate assumption or rejection of the leases.

On January 22, 2016, Prime filed an amended opposition to the Trustee's motion to extend deadline.  Prime argued: that the Code § 365(d)(3) does not afford the Trustee the discretion to withhold rent payment for the benefit of the estate and other creditors; and that no cause exists to extend the deadline to assume or reject when Prime may be irreparably harmed if the Trustee continues to operate the Debtor's restaurant at Gateway Marketplace without paying rent and the Debtor should become administratively insolvent.[2]

On February 1, 2016, the Trustee filed an amended objection to Prime's Motion to Compel and support for his motion to extend the deadline to assume or reject.  In his amended objection (Doc. 233) the Trustee argues that the estate has or is attempting to employ professionals to renegotiate the leases and market the estate's property, but that he still cannot determine the Debtor's financial condition adequately enough to make a decision on assuming or rejecting leases.  The Trustee requested an extension until the time of plan confirmation to make his determination whether to assume or reject leases.

On February 4, 2016, the Trustee and Prime filed a stipulation (Doc. 247) regarding Prime's motion for assumption or rejection of leases and opposition to the Trustee's motion to extend the deadline to assume or reject leases.  The stipulation states:  that the Debtor is current "with respect to post-petition minimum rent" under the lease where Debtor operates the Gateway Marketplace Chili's; and that the Trustee shall remain current on postpetition rent on the Chili's

---

[2] The Trustee has pending a first interim application (Doc. 358) seeking an award of interim trustee fees calculated under the formula in 11 U.S.C. § 326 in the amount of $218,458.50 plus reimbursement of costs in the sum of $16,261.84.

lease through the extended assumption period requested by Trustee or else Prime will be entitled to relief from the automatic stay with respect to the Chili's lease without further order of the Court.  With respect to the OTB lease, the Trustee must assume or reject that lease by February 18, 2016.  Otherwise, Prime's objection to the Trustee's motion to extend the deadline to assume or reject leases was withdrawn and Prime's Motion to Compel was limited to whether Prime was entitled to immediate payment of outstanding postpetition rent owed under the OTB lease.  The Court approved that stipulation on February 9, 2016, and reset the hearing on Prime's Motion to Compel for March 11, 2016.  Debtor was granted until May 18, 2016, to assume or reject the Chili's lease (Doc. 262).

On February 18, 2016, the Trustee filed a motion (Doc. 288) to reject the unexpired lease of the OTB premises in Gateway Marketplace, retroactive to the date of filing of the motion.  The Trustee's motion states that the unpaid postpetition rent for the OTB lease with Prime is $83,600, and that the Debtor has not operated OTB since the filing of the Debtor's bankruptcy petition. The notice period to respond and request a hearing on the Trustee's motion expired without objection by Prime.  On March 8, 2016, the Court entered an order (Doc. 314) granting the Trustee's motion and authorizing the Trustee to reject the OTB lease from Prime, with the rejection retroactive to February 18, 2016.

At the hearing on March 11, 2016, neither Prime nor the Trustee offered any exhibits or witness testimony.  Prime's attorney argued, without evidence, that the amount of unpaid rent under the OTB lease is approximately $97,000 for the period from the petition date through March 10, 2016, and requested that the Trustee be ordered to pay that amount of rent immediately.  The Trustee's attorney stated that the Trustee does not dispute the Trustee's

obligation to pay Prime for the OTB lease payments as an administrative claim, but he argued that the amount of unpaid rent is $83,600 as stated in its motion to reject the OTB lease retroactively; he described the only dispute is the timing of paying that obligation.

The Trustee urges that this Court grant Prime an administrative priority for the postpetition rent due in the amount of $83,600, as awarded by the Court in *In re Overland Express, LLP*, 20 Mont. B.R. 149 (Bankr. D. Mont. 2002). The Trustee admits that Prime has an administrative priority claim in that amount which the estate will pay after sale of the estate's assets. The Trustee requests, however, that the Court not order immediate payment.

## DISCUSSION

With the approved stipulation (Doc. 247) between Prime and the Trustee, the only issues before the Court involve: the amount of the unpaid postpetition lease payments due on the OTB lease; and whether the Trustee must pay Prime that amount immediately or whether Prime should be awarded an administrative claim as this Court awarded in *Overland Express*. The instant case is distinguishable from *Overland Express*. *Overland Express* involved a Chapter 11 case which was converted to Chapter 7 before the debtor assumed or rejected an unexpired lease. 20 Mont. B.R. at 150. The lessor did not seek payment of an administrative claim for rent until after the case was converted to Chapter 7. *Id.* This Court awarded the lessor an administrative claim for the pre-conversion rent based on § 365(d)(3) and § 503(b), but the administrative claim for pre-conversion rent was given second tier priority under 11 U.S.C. § 726(b) behind Chapter 7 administrative claims. *Id.*, 20 Mont. B.R. at 154, 156. By contrast, the instant Chapter 11 case has not been converted so § 726(b) does not apply. Further, Prime has filed its Motion to Compel timely payment of lease payments pursuant to § 365(d)(3), while the creditor in

7

*Overland Express* did not file its claim until after the case was converted. The Trustee concedes Prime has an administrative claim for the unpaid OTB lease payments, so § 503(b)(1) is not in dispute.

As for the amount of Prime's claim for postpetition lease payments due under the OTB lease, Prime offered no evidence at the hearing to support a finding that the unpaid rent due OTB is $59,329 as requested in its Motion to Compel, or $97,000 as Prime's attorney argued at the hearing. Attorney argument is not admissible in evidence and therefore not relevant. *Hurley v. Student Loan Acquisition Auth. of Ariz. (In re Hurley)*, 258 B.R. 15, 23 (Bankr. D. Mont. 2001) (An attorney's argument is not evidence); *United States v. Velarde-Gomez*, 224 F.3d 1062, 1073 (9th Cir. 2000); *Exeter Bancorporation v. Kemper Sec. Grp., Inc.*, 58 F.3d 1306, 1312 n.5 (8th Cir. 1995) (Statements of counsel are not evidence and do not create issues of fact), citing *United States v. Fetlow*, 21 F.3d 243, 248 (8th Cir. 1994), *cert. denied*, 513 U.S. 977 (1994); *In re Nielsen*, 211 B.R. 19, 22 n.3 (8th Cir. BAP 1997) (Neither statements of counsel nor exhibits to a brief are evidence unless expressly stipulated as admissible evidence).

The Trustee's motion and his counsel at the hearing each stated that the amount of unpaid postpetition OTB lease payments owed to Prime is $83,600. The Trustee's motion to reject the OTB lease requested that rejection be retroactive to the date of the Trustee's motion. The Trustee's motion (Doc. 288) was served on Prime's attorneys of record, including local counsel. The Court treats the statements of the Trustee in his motion as an admission of the $83,600 amount of unpaid postpetition lease payments owing to Prime; the Court also deems Prime's failure to respond to the Trustee's motion after notice as its admission under Mont. LBR 9013-1(f) that the relief requested in the Trustee's motion should be granted, including the $83,600

8

amount.  Based on those admissions the Court finds that the amount of postpetition lease

payments owed by the estate to Prime for the OTB lease at Gateway Marketplace is $83,600.

Turning to the final issue under § 365(d)(3), the Trustee requests that the estate not be

ordered to pay Prime its administrative claim immediately because of the condition of the

Debtor's books and the harm immediate payment would inflict on other creditors and interested

parties.  The Trustee seeks relief contrary to the specific language of § 365(d)(3).

Section 365(d)(3) provides:

> The trustee *shall timely perform* all the obligations of the debtor, except those
> specified in section 365(b)(2), arising from and after the order for relief under any
> unexpired lease of nonresidential real property, until such lease is assumed or
> rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for
> cause, the time for performance of any such obligation that arises within 60 days
> after the date of the order for relief, but the time for performance shall not be
> extended beyond such 60-day period. This subsection shall not be deemed to
> affect the trustee's obligations under the provisions of subsection (b) or (f) of this
> section. Acceptance of any such performance does not constitute waiver or
> relinquishment of the lessor's rights under such lease or under this title.

*In re Cukierman*, 265 F.2d 845, 846 (9th Cir. 2001); *Overland Express,* 20 Mont. B.R. at 151.

(Emphasis added).

The 60-day period after the order for relief specified in § 365(d)(3), beyond which "the

time for performance shall not be extended[,]" has expired.  The Supreme Court advised in

*Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992) discussing statutory

interpretation:

> While courts should disfavor interpretations of statutes that render language
> superfluous, in this case that canon does not apply.
>
> In any event, canons of construction are no more than rules of thumb that
> help courts determine the meaning of legislation, and in interpreting a statute a
> court should always turn first to one, cardinal canon before all others. We have

stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. *See, e.g., United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241-242 (1989); *United States v. Goldenberg*, 168 U.S. 95, 102-103 (1897); *Oneale v. Thorton [Thornton ]*, 6 [Cranch 53, 68, 3 L.Ed. 150] (1810). When the words of a statute are unambiguous, then, this first canon is also the last: "judicial inquiry is complete." *Rubin v. United States*, 449 U.S. 424, 430 (1981); *see also Ron Pair Enterprises, supra*, at 241.

The language of § 365(d)(3) that the "trustee shall timely perform all the obligations of the debtor . . . under any unexpired lease of nonresidential real property, until such lease is assumed or rejected," is unambiguous.  In construing § 365(d)(3) the Ninth Circuit wrote:

In a case brought under Chapter 11, an unexpired lease of nonresidential real property is deemed rejected and the trustee must immediately surrender the property if the trustee does not assume or reject the lease within sixty days after the date of the order for relief, unless the bankruptcy court grants additional time. 11 U.S.C. § 363(d)(4).  Until the trustee assumes or rejects an unexpired lease of nonresidential real property, the trustee must perform obligations under that lease in accordance with 11 U.S.C. § 365(d)(3).

*Cukierman*, 265 F.3d at 849.

The Ninth Circuit explained:

Congress made the provision for trustee compliance broad, extending it to cover all the obligations under a lease.  A broad interpretation of this provision is consistent with the purpose of § 365(d)(3), which is to ensure immediate payment of lease obligations so that the landlord is not left providing uncompensated services.

*Id.* at 850-51.

Soon after its decision in *Cukierman* the Ninth Circuit repeated the broad scope of § 365(d)(3):  "We have interpreted § 365(d)(3) broadly, consistent with its purpose of ensuring immediate payment of lease obligations to protect landlords pending the trustee's decision to assume or reject a lease."  *In re LPM Corp*., 300 F.3d 1134, 1138 (9th Cir. 2002), citing

10

*Cukierman*, 265 F.3d at 850-51.

The Trustee's failure to pay immediately the lease obligations owing to Prime under the OTB lease is inconsistent with the broad interpretation of § 365(d)(3) and clear holdings of the Ninth Circuit that § 365(d)(3) requires immediate payment under the lease. *LPM*, 300 F.3d at 1138; *Cukierman*, 265 F.3d at 850-51.

The Ninth Circuit further held that "the contractual rate of rent, rather than any measure of the value of the trustee's actual use of the property, was entitled to administrative priority under § 365(d)(3)." *Cukierman*, 265 F.3d at 850, citing *In re Pac.-Atl. Trading Co.*, 27 F.3d 401, 405 (9th Cir. 1994). The Ninth Circuit declined to adopt a rule that § 365(d)(3) applies only to obligations that are related to the use of premises because "[u]nder such a rule, landlords would not be paid immediately." *Cukierman*, 265 F.3d at 851. These decisions of the Ninth Circuit are controlling authority in this district, and do not permit this Court to grant relief from the unambiguous requirement of § 365(d)(3) for immediate payment, as the Trustee urges based on decisions from other circuits, because of possible harm to the estate or other creditors or parties. *Cukierman*, 265 F.3d at 850-51; *Pac.-Atl. Trading*, 27 F.3d at 405.

The Ninth Circuit explained why it would not hold that § 356(d)(3) applies only to obligations that are related to the use of the premises:

> Acting either in good-faith uncertainty about the contours of such a rule or in a bad-faith effort to evade their contractual responsibilities, trustees would have an incentive to withhold performance of lease obligations. Such trustees would be motivated by the hope that the bankruptcy court would subsequently exclude the obligation from the reach of § 365(d)(3). This potential for dispute and delay would defeat § 365(d)(3)'s purpose of ensuring that trustees promptly perform lease obligations. *Cf. Pacific-Atlantic*, 27 F.3d at 405 (rejecting an interpretation of § 365(d)(3) that would potentially reward trustees for failing to timely perform lease obligations).

11

The bankruptcy trustee has primary responsibility for administering § 365(d)(3).  For that section to function properly, bankruptcy trustees must know which lease obligations they are required to perform in a timely fashion.

Interpreting § 365(b)(3) as a bright-line rule, encompassing all obligations contained in a bargained-for agreement, ensures prompt performance of lease obligations by bankruptcy trustees.  The simplicity of this rule prevents delays and disputes caused by uncertainty over whether the provision applies to any given lease obligation.  If the trustee fails to perform a lease obligation, the plain meaning of § 365(d)(3) serves to eliminate disputes over whether the claim arising from that nonperformance is entitled to administrative priority, and thus advances the interest of resolving bankruptcy cases expeditiously.  *See In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1155 (9th Cir. 1991).

We therefore conclude that Cukierman's position must be rejected. Because Cukierman's obligation to pay "further rent" was an obligation under an unexpired lease of nonresidential real property, it is an obligation that he was required to perform pending the assumption or rejection of the lease.  *See* 11 U.S.C. § 365(d)(3).  TACI/TACMI's claim to the unpaid portion of that obligation is entitled to administrative priority under the rule we set forth in *Pacific-Atlantic. See Pacific-Atlantic*, 27 F.3d at 405.

*Cukierman*, 265 F.3d at 851-52.

The instant case reflects just the kind the delay and dispute the Ninth Circuit cautioned against in *Cukierman*.  The Trustee was added to the case on February 29, 2015.  Rather than timely and immediately paying Prime under the OTB lease as required by § 365(d)(3), the Trustee seeks an unspecified delay before it pays Prime its administrative claim.  Further, while depriving Prime of prompt performance under its bargained-for lease, the Trustee applies for an award of interim fees in the sum of $218,458.50.  The Trustee's position is without support under the unambiguous language of § 365(d)(3) and controlling Ninth Circuit authority.

**IT IS ORDERED** a separate Order shall be entered overruling the Trustee's objections, granting Prime's Motion to Compel and ordering the Trustee to pay Prime immediately the sum

of $83,600 in postpetition payments due under the OTB shopping center lease of nonresidential real property from Prime in the Gateway Marketplace in Meridian, Idaho, where the Debtor formerly operated the On the Border Mexican Grill & Cantina.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge