## STM LIQUIDATING TRUST AGREEMENT

**THIS STM LIQUIDATING TRUST AGREEMENT** is dated this _____ day of_____, 2017 ("Trust Agreement") and is entered into by and between Shoot the Moon, LLC ("STM"), (the "Debtor"), and Jeremiah Foster, as trustee (the "Trustee") (as defined below) for the benefit of the creditors and equity interest holders of STM, as defined below and incorporated herein by reference.

## STATEMENT OF FACTS

**WHEREAS**, on October 21, 2015, STM filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Petition Date") in the United States Bankruptcy Court for the District of Montana (the "Bankruptcy Court"); and

**WHEREAS**, has sold substantially all of its assets pursuant to the order of the Bankruptcy Court. From the proceeds of such sale STM paid certain administrative expenses, priority claims, and secured claims; and

**WHEREAS,** STM also must analyze and prosecute affirmative claims it may have against insiders, Chapter 5 claims against creditors and others, and other affirmative claims it may have based on past business operations and management; and

**WHEREAS**, STM has proposed a Chapter 11 Plan of Liquidation (the "Plan") that provides for the distribution of any remaining proceeds from the sale of assets and all other assets and rights of the Estate to the STM liquidating trust for the benefit of unsecured creditors and equity interest holders ("Beneficiaries"); and

**WHEREAS,** a litigation trust is further needed to marshal all of the remaining assets of STM after payment of associated expenses, prepare and file all estate tax returns, and make final distributions to the extent funds are available.

## AGREEMENT

**NOW, THEREFORE**, in consideration of the premises and the mutual promises and agreements contained herein and for other valuable consideration the receipt and sufficiency of which are hereby expressly acknowledged, STM, and the Trustee on behalf of the Beneficiaries hereby agree as follows:

## DEFINED TERMS

1.  <u>Terms Defined Above.</u>  As used in this Agreement, each of the terms "Bankruptcy Court", "Plan," "STM," "Trustee," "the "Debtor," the "Petition Date," and the "Beneficiaries" shall have the meaning set forth above.

STM LIQUIDATING TRUST AGREEMENT - 1

2. <u>Additional Defined Terms.</u>  As used herein, the following terms shall have the meanings set forth below unless the context otherwise requires:

(a) "Administrative Claims" shall mean the post-petition expenses described in 11 U.S.C. §503 and with a priority of payment as provided in 11 U.S.C. § 507. Administrative claims include, but are not limited to, accountants and attorneys' fees and costs and taxes incurred during the course of the bankruptcy.

(b) "Bankruptcy Code" shall mean Title 11 of the United States Code.

(c) "Beneficial Interest" shall mean the rights and interests of each of the Beneficiaries in and to the Trust Estate.

(d) "Claim" shall have the same meaning as claim amount.

(e) "Claim Amount" shall mean the principal amount owed to each Beneficiary, except to the extent a claim amount is a duplication of another claim or is unsupportable.  As used in this Trust Agreement, Claim Amount does not include accrued interest and expenses incurred on the claim.

(f) "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order of the Plan on its docket.

(g) "Confirmation Order" shall mean the Order of the Bankruptcy Court confirming the Plan.

(h) "Effective Date of the TPEC Plan" shall mean 10 days after the Confirmation Order is docketed by the Bankruptcy Court.

(i) "Trust Assets" shall mean any and all property of the Debtor which shall be irrevocably assigned, transferred and conveyed to the Liquidating Trust as of the Effective Date of the Plan.

(j) "Trust Causes of Action" shall mean any and all Causes of Action that shall vest in the Liquidating Trust as of the Effective Date of the Plan.

(k) "Priority Unsecured Claims" shall mean unpaid wages of Debtor's employees capped at $12,475.00 each.

(l) "Unsecured Creditors" shall mean the creditors in the STM bankruptcy case holding general unsecured claims.

(m) "Equity Interest Holders" shall mean all ownership interests in STM as of the Effective Date.

STM LIQUIDATING TRUST AGREEMENT - 2

# ARTICLE I

# ORGANIZATION OF TRUST

1.1 <u>Source.</u>  The Beneficiaries are the sole beneficiaries of the Trust.

1.2 <u>Office.</u>  The office of the Trustee shall be at 7201 E Camelback Rd # 250, Scottsdale, AZ 85251, or at such other address as the Trustee may from time to time designate.

1.3 <u>Appointment of the Trustee.</u>  Jeremiah Foster is hereby appointed as Trustee of the Trust effective as of the date hereof, to have all the rights, powers and duties set forth herein. The Trustee hereby agrees to serve as trustee of the Trust.

1.4 <u>Agreement Controls Over Plan.</u>  The parties hereby agree to incorporate by reference in full all the terms and provisions of this Trust Agreement in any Plan and order confirming a Plan. In the event that there shall exist any inconsistency between the respective terms and provisions of the Plan and this Trust Agreement, the terms and provisions of this Trust Agreement shall govern, control and take precedence.

1.5 <u>Irrevocability.</u>  The Debtor does not have any right to amend, revise or revoke the Trust, and reserves no powers over the Trustee, the Trust Assets, or the Beneficiaries.

1.6 <u>Effect of Actions.</u>  Unless contrary to the provisions of this Trust Agreement, all actions taken and determinations made by the Trustee shall be final and binding upon all Beneficiaries individually and collectively.

1.7 <u>Effective Date.</u>  The Trust shall be established and become effective upon execution of this Trust Agreement and sixty (60) days the Confirmation Order.

1.8 <u>Exemption from Registration.</u>  The parties to this Trust Agreement intend that the rights of the Beneficiaries arising pursuant to this Trust Agreement shall not be "securities" under applicable law, but none of the parties represent or warrant that such rights shall not be securities or shall be entitled to exemption from registration under applicable securities law.

# ARTICLE II

# AUTHORITY AND CERTAIN DIRECTIONS TO TRUSTEE: DECLARATION OF TRUST

2.1 <u>Creation of the STM Liquidating Trust.</u>  The Beneficiaries and STM hereby create the STM Liquidating Trust (the "Trust") for the benefit of the Beneficiaries. Upon confirmation of a Plan, the Debtor shall execute this Agreement, and subject to the provisions of Section 2.2 below, shall irrevocably transfer, absolutely assign, convey, set over, and deliver to the Trust, and its successors and assigns, all right, title, and interest of the Debtor in and to the Trust Assets, in trust, to and for the benefit of the Beneficiaries for the uses and purposes stated herein. The Confirmation Order shall automatically vest the Trust Assets in the Trust (the "Trust

Estate") without the need for any additional documentation, notice, or acknowledgements; *however*, to the extent reasonably requested by the Trustee, the Debtor shall execute and deliver such other instruments of sale, transfer, conveyance, assignment, and confirmation, and will cooperate and take such other actions, as are necessary or desirable in order to transfer, convey, and assign all rights, title, and interests in and to the Trust Assets to the Trust.

2.2    Transfer of Trust Assets.  Transfer of the Trust Assets to the Trust, pursuant to and in accordance with the Plan and this Trust Agreement, shall be deemed a transfer to and for the benefit of the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Trust to hold in trust for the benefit of the Beneficiaries, except as otherwise provided in the Plan or this Trust Agreement.  The Beneficiaries shall be treated as the Grantors and deemed owners of the Trust.  Except as otherwise provided by the Plan or this Trust Agreement, upon the Effective Date of the Plan, title to the Trust Assets shall pass to the Trust free and clear of all Claims and Interests, in accordance with Section 1141 of the Bankruptcy Code.

2.3    Property in the Trust.  The Trust shall hold the legal title to all property at any time constituting a part of the Trust Estate and shall hold such property in trust to be administered and/or disposed of by it pursuant to the terms of this Agreement and the Plan for the benefit of the Beneficiaries. The Trustee shall invest the Trust Assets, or proceeds from the Trust Assets, subject to the limitations set forth in 11 U.S.C. § 345. The Trustee may make such investments in such amounts and at such times as he may deem necessary in his sole and absolute discretion, to provide funds when needed to make payment from the Trust Assets.  The Trustee is authorized to make disbursements and payments from the Trust Estate as described in this Agreement.

2.4    Purpose.  The purposes of the Trust include but are not limited to authorizing and directing the Trustee to take such action in connection with the Trust Assets to maximize their value by maintaining, preserving, repairing, selling, transferring, conveying, completing, constructing, expanding, encumbering the Trust Assets, and any other lawful action that is consistent with and carries out the objectives of this Trust Agreement. The Trustee is hereby authorized and directed: (i) to take all reasonable and necessary actions to conserve and protect the Trust Estate; (ii) to administer, compromise, settle, object to and litigate Trust Causes of Action; (iii) to the extent necessary and appropriate, object to Claims asserted against the Debtor; and (iv) to maintain, operate, lease, or sell or otherwise dispose of the Trust Estate, in accordance with the terms of this Agreement, the Plan, and to distribute the net proceeds of such disposition to the Beneficiaries, in as prompt, efficient, and as orderly a fashion as possible.

2.5    Acceptance of Trust and Conveyance.  The Trustee is hereby directed to, and the Trustee accepts the Trust imposed upon him by this Trust Agreement and agrees to observe and perform that trust, upon and subject to the terms and conditions set forth in this Trust Agreement.  Further, the Trustee agrees that he will:

      (a)    Accept delivery of the Trust Assets on behalf of the Trust; and

      (b)    Take such other action as may be required of the Trust hereunder, including the receipt and acceptance of the Trust Estate.

STM LIQUIDATING TRUST AGREEMENT - 4

2.6     Title.  On the Effective Date of the Plan, legal title to all Trust Assets shall be vested in the Trust in accordance with and pursuant to the terms of the Plan and this Agreement. Without limiting the foregoing, on the Effective Date of the Plan, the Trustee, on behalf of the Trust, shall be: (i) authorized to act as representative of the Debtor's Estate in respect of any and all claims or causes of action that constitute Trust Assets or a claim against the Debtor or Trust Estate; and (ii) substituted as successor to STM in all actions and proceedings pending or thereafter commenced in the Bankruptcy Court or elsewhere in regard to the Trust Assets or the Trust Estate.

## ARTICLE III

## ADMINISTRATION OF TRUST ESTATE

3.1     Trust Expenses.  The fees and costs incurred by the Trustee and the Trustee's attorneys, accountants, advisors or other professionals and the expenses of administration shall be paid from funds in the trust and on a monthly basis, without application to the Bankruptcy Court.

3.2     Oversight Committee Appointment.  Oversight of the Trustee's implementation and administration of the STM Liquidating Trust shall be provided by an Oversight Committee. On or prior to the Effective Date, the Oversight Committee shall be appointed pursuant to the terms of the Plan. The Oversight Committee Members shall include representatives of the three (3) general unsecured claimants holding the largest general unsecured allowed claims who are not the subject of Trust Causes of Action.

3.3     Duties of the Oversight Committee.  The Oversight Committee shall oversee the implementation and administration of the Liquidating Trust and shall operate in accordance with the terms set forth in the Plan and this Agreement. Specifically, the Oversight Committee shall have the following rights, obligations and duties:

(a)     approve the Trustee's compensation pursuant to the terms of this Agreement;

(b)     approve the Trustee's retention of counsel and other professionals, as well as the terms governing the engagement of such counsel and professionals, who may have been previously engaged by the Chapter 11 Trustee, and establish retainer terms, conditions and budgets;

(c)     in the event of the resignation, incapacity, or death of the Trustee, to appoint a successor Trustee;

(d)     in the event of the resignation, incapacity, or death of an Oversight Committee Member, to appoint a successor Oversight Committee Member; provided, however, that the Oversight Committee shall at all times consist of representatives of the three (3) general unsecured claimants holding the largest general unsecured claims who are not the subject of Trust Causes of Action;

STM LIQUIDATING TRUST AGREEMENT - 5

(f) review and approve any settlements and agreements related to the allowance of Claims; and

(g) generally oversee, review and guide the Trustee on the performance of Trustee's duties and activities.

## ARTICLE IV

## DUTIES OF THE TRUSTEE

4.1 <u>Obligations of Trustee.</u>  The Trustee shall perform and discharge all obligations and duties specifically assigned to him pursuant to the terms of this Trust Agreement and the Plan, and such other duties as may be necessary or appropriate in order to carry out and implement this Agreement and the Plan. The Trustee shall manage and operate the Trust Assets in such a manner as to maximize the value of the Trust Assets pending their final disposition in accordance with the Plan and this Trust Agreement.

4.2 <u>No Duties Except as Specified in Trust Agreement or Plan.</u>  The Trustee shall not have any right, duty, or obligation to manage, make any payment in respect of, register, record, sell, dispose of, vary, or otherwise deal with the Trust Assets, or to otherwise take or refrain from taking any action under, or in connection with the Trust Assets or any portion thereof, except as expressly provided by the terms of this Trust Agreement and the Plan.

4.3 <u>Powers of the Trustee.</u>  The Trustee shall have such rights and powers as are set forth in this Trust Agreement and in the Plan in order to carry out and implement the purposes and intents of the Trust. The Debtor hereby grants, assigns, conveys, delivers, delegates and sets over unto the Trustee and the Trust Estate in trust for the benefit of the Beneficiaries and subject to the terms and provision set out in this Trust Agreement and the Plan, all of the authority, rights, powers and duties previously vested in the Debtor under the Bankruptcy Code and applicable non-bankruptcy law including without limitation such laws to which the Debtor or the Trustee is or hereafter may become subject. All powers granted to the Trustee by this Trust Agreement are exercisable by the Trustee only in a fiduciary capacity and only in furtherance of the administration of the Trust Assets in accordance with this Trust Agreement. During the Trustee's administration of the Trust, and subject to the Plan and the Agreement, the Trustee may exercise the following powers and duties:

(a) hold and retain the Trust Assets in the form in which it receives the same until its sale or other disposition and to have exclusive, possession, and control thereof as permissible under applicable law;

(b) manage and operate the Trust Assets, to maintain, maximize and preserve the value of the Trust Assets and to employ such persons, including former employees and members of management of the Debtor, as may be necessary to carry out the purposes of the Trust;

STM LIQUIDATING TRUST AGREEMENT - 6

(c) distribute the Trust Assets, and the proceeds of sales thereof, as provided in this Agreement;

(d) open bank deposit and checking accounts, deposit funds therein, withdraw funds therefrom and conduct such other banking activities as are necessary for the effectuation of the trust set forth herein, and to pay routine and ordinary fees in connection therewith;

(e) select and employ such brokers, banks, institutions, investment counsel, attorneys, accountants, appraisers and such other agents as it may deem advisable, and to delegate to such agents such of its ministerial duties, rights and powers as it deems necessary and appropriate, and to pay reasonable compensation to such agents;

(f) commence, litigate, arbitrate, adjust, defend, abandon, settle or compromise any causes of action relating to the Trust Assets on such terms as it may deem advisable;

(g) institute any action or proceeding at law or in equity for the collection of the sums due the Trust or otherwise to advance the interest of the Trust;

(h) enter into, perform, and exercise rights under contracts binding upon the Trust (but not upon the Trustee in his individual or corporate capacity) which are reasonably incident to the administration of the Trust and which the Trustee, in the exercise of his best business judgment, reasonably believes to be in the best interests of the Trust;

(i) collect and receive any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Trust Estate and to distribute the same to the Beneficiaries in accordance with the terms of this Agreement;

(j) pay any and all necessary expenses attributable or relating to the management, maintenance, operation, preservation, or liquidation of the Trust Estate;

(k) investigate, file, compromise, settle, withdraw, or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to Claims filed against the Debtor's Estate, the Trust Estate or the Trust;

(l) investigate, file, compromise, settle, withdraw, or litigate in Bankruptcy Court or other court of competent jurisdiction, any and all Claims, Trust Causes of Action, Avoidance Actions, or other causes of action belonging to the Trust Estate;

(m) sue in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Trust, the Trustee, or the Beneficiaries relating to the Trust Assets;

(n) represent the interests of the Beneficiaries in their capacity as beneficiaries of the Trust with respect to any matters relating to the Plan, this Agreement, or the Trust affecting the rights of such Beneficiaries;

STM LIQUIDATING TRUST AGREEMENT - 7

   (o) act as representative of the Debtor's Estate with respect to the assets that constitute the Trust Estate, and to investigate, initiate, prosecute, settle, or compromise any and all Trust Causes of Action, Claims, or causes of action belonging to the Trust Estate;

   (p) if the Trust shall become subject to federal income or state tax, the Trustee shall have the power, but not the obligation, exercisable at his discretion, to take any action reasonably necessary to minimize any adverse federal or state income tax consequences to the Beneficiaries resulting from any distribution made by the Trust to such Beneficiaries; and

   (q) do any and all other things, not in violation of any other terms of the Plan and this Trust Agreement, which, in the reasonable business judgment of the Trustee, are necessary or appropriate for the proper liquidation, management, investment, and distribution of the assets of the Trust Estate in accordance with the provisions of this Trust Agreement and the Plan.

  4.4 <u>Exculpation of the Trustee.</u> Neither the Trustee nor any officers, directors, affiliates, employees, attorneys, consultants, or agents of the Trustee shall have any liability to any Beneficiaries or to any other person or entity for (a) the obligations of the Trust or (b) for the consequences of their acts and omissions in the performance of their respective duties hereunder and under the Plan, including without limitation with respect to any losses incurred on investments made by the Trustee in accordance with the terms of the Plan and this Trust Agreement, except to the extent such consequences are caused by acts which constitute bad faith, willful misfeasance, gross negligence or willful disregard of duties. Neither the Trustee nor any officers, directors, affiliates, employees, attorneys or agents of the Trustee shall have any liability to any of the Beneficiaries, collectively or individually, or to any other person for the consequences of any act or omission.

  4.5 <u>Trustee Not Acting in Individual Capacity</u>. The Trustee may contract in such a manner that the Trustee is exempt from personal liability and that liability is limited to the Trust Estate. The Trustee shall not engage in self-dealing, and any material self-dealing shall be considered willful. The foregoing notwithstanding, the Trustee shall be personally liable to the Trust, Beneficiaries or third parties for bad faith, breach of fiduciary duty, dishonesty, recklessness, gross negligence, fraud or similar acts.

  4.6 <u>Distributions.</u>

   (a) Unless otherwise ordered by a court of competent jurisdiction, and irrespective of the priority of each Beneficiary's claim, all Trust Assets shall be distributed by the Trustee in the following order: (i) administrative expenses incurred by the Trust including reasonable attorney fees and costs; (ii) to all priority claims in their allowed amount; (iii) then to all unsecured general creditors on a pro rata basis according to their Claim Amount and in accordance with the provisions of this Agreement and the Plan. In the event any excess funds exist after payment of the amounts described in this paragraph 4.6 (a), (i), (ii), and (iii), the excess funds shall be used to pay interest at the rate of 10% on all unsecured priority and general

claims, and then any excess funds shall be divided on a pro rata basis to all equity interest holders, with no interest.

(b) All cash held by the Trustee shall be deposited in a bank account established by the Trust and held by the Trustee and if deemed advisable by the Trustee, invested as permitted by this Trust Agreement. The Trustee shall keep an accounting of receipts and disbursements which shall be available to the Beneficiaries upon written request at all reasonable times.

(c) No Beneficiaries shall dispute the amount or priority of any other Beneficiaries' claim.

(d) **By acceptance of this Trust through confirmation of the Liquidation Plan of all Beneficiaries acknowledge and agree that the distribution received on their Claims under paragraph 4.6(a) shall be in complete and final satisfaction of their Claims and Claim Amounts in the STM Bankruptcy Proceeding and the distribution under paragraph 4.6(a) is in final and absolute satisfaction of their Claims, Claim Amounts, or Proof of Interest, including any and all Claims arising under or related to 11 U.S.C. § 365.**

4.7     Termination of the Trust.  This Trust Agreement and the Trust shall terminate and this Trust Agreement shall be of no further force or effect (the "Trust Termination Date") thirty (30) days after the final distribution by the Trustee of all money and other properties and proceeds constituting the Trust Assets. Upon termination of the Trust as herein provided, the Trustee shall execute and lodge among the records of the Trust an instrument setting forth the fact of such termination, and the Trustee shall thereupon be discharged from all further liabilities and duties hereunder.

4.8     Right to Withhold.  To the extent that the Trustee is required by applicable law to withhold or otherwise deduct any taxes or other governmental charges in respect of any distributions made pursuant to the Trust, the Trustee shall be entitled to withhold or deduct the amount of such taxes or charges from the gross amount of such distribution and remit the same to the appropriate taxing or governmental authority.

4.9     No Premature Termination.  The death, incapacity, insolvency or bankruptcy of a Beneficiary during the term of the Trust shall not operate to terminate the Trust, nor shall it entitle the representatives or creditors of such Beneficiary to enforce the interests of such Beneficiary in any manner other than as provided for in this Trust Agreement.

4.10    Trust Not An Investment Company.  The Trustee shall not take any action which might cause the Trust to become subject to the provisions of the Investment Company Act of 1940, as amended.

4.11    Tax Treatment of the Trust.  It is anticipated that the Trust will constitute either a liquidating trust or a grantor trust owned, within the meaning of Section 671 of the Internal Revenue Code of 1986, as amended (the "IRC"), entirely by the Beneficiaries. The Trustee shall have the right, but not the obligation, to file a ruling request with, or otherwise seek guidance or

advice from, the Internal Revenue Service or tax counsel as to the proper federal income tax classification and treatment of the Trust and, upon receipt of such guidance, shall file the appropriate federal, state, and local income tax returns, provide Beneficiaries with the appropriate information returns, and, in accordance with such guidance or advice, pay from the corpus or income of the Trust (to the extent that it is subject to income taxation) any federal, state, or local income tax attributable to the earnings of the Trust. Pending receipt of such guidance or advice, the Trustee shall be entitled:

(a) to assume that the Trust is either a liquidating trust, a grantor trust owned entirely by the Beneficiaries, or a complex trust taxable under section 641 of the IRC, with each Beneficiary treated as owning a separate and independent share within the meaning of section 663(c) of the IRC and the regulations issued thereunder;

(b) to pay from the Trust Assets such federal, state, and local income taxes as may be payable in accordance with such assumptions; and

(c) to file and amend as appropriate in the determination and sole discretion of Trustee all federal, state, and local income tax returns, and provide the Beneficiaries with information statements in accordance with such assumptions. The taxable year of the Trust shall, unless otherwise required by the IRC, be the calendar year.

4.12  <u>Bonds.</u>  Unless a bond is required by law, no bond shall be required of the Trustee hereunder. If a bond is required by law, no surety or security with respect to such bond shall be required unless such security is also required by law. If any such bond is required, all costs and expenses of procuring any such bond shall be paid by the Trustee as a cost of administering the Trust.

4.13  <u>Costs and Expenses of Trustee.</u>  The Trustee shall pay out of the Trust Assets all reasonable costs, expenses, and obligations incurred by the Trustee in carrying out his duties under this Agreement or in any manner connected, incidental or related to the administration of the Trust, without application to the Bankruptcy Court, including, without limitation:

(a) Any reasonable fees and expenses of attorneys, accountants, consultants, analysts, investment advisors, expert witnesses, insurance adjusters, property managers, realtors, brokers, professionals, or other persons whom the Trustee may reasonably deem advisable to employ in connection with the Trust, or in their own behalf in accordance with the terms of this Agreement;

(b) Any federal or state taxes, charges, and assessments which may be owed by, or levied or assessed against, the Trust Estate or any property held in trust hereunder; and

(c) Reasonable compensation for the fees performed pursuant to the terms of, and in accordance with this Agreement, at the hourly rate set forth below.

4.14  <u>Compensation of Trustee.</u>  The Trustee will be compensated as follows:

STM LIQUIDATING TRUST AGREEMENT - 10

(a) The Trustee shall receive compensation at a rate not to exceed 3% of disbursements in a manner consistent with §§ 326 and 330 of the Bankruptcy Code, from and after the Effective Date of the Plan, through the earlier of (i) the Termination Date, (ii) the appointment of a new trustee for the Trust or (iii) the resignation of the Trustee; and

(b) The Trust shall reimburse the Trustee for reasonable, actual, and necessary expenses, relating solely to the Trustee's performance of his responsibilities under the Agreement.

## ARTICLE V

## SUCCESSOR TRUSTEES AND ADDITIONAL TRUSTEES

5.1    Resignation or Removal of Trustee; Appointment of Successor.

5.1.1    Resignation.  The Trustee may resign at any time without cause by giving at least sixty (60) days prior written notice to the Beneficiaries. Notwithstanding any other provision in this Trust Agreement, the Beneficiaries may remove a Trustee at any time, with cause, upon the vote of the Beneficiaries holding the majority of Claim Amounts.  Any removal of the Trustee by such vote of the Beneficiaries and with cause shall be effective immediately upon giving written notice to the Trustee.

5.1.2    Successor Trustee.  Any successor Trustee shall execute and deliver to the Beneficiaries an instrument accepting such appointment, and thereupon such successor Trustee, without further act, shall become vested with all the estates, properties, rights, powers, duties, and trusts of the predecessor Trustee in the Trust with like effect as if originally named the Trustee herein; but nevertheless, upon the written request of such successor Trustee, such predecessor Trustee shall execute and deliver an instrument(s) transferring to such successor Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers, duties, and trusts of such predecessor Trustee, and such predecessor Trustee shall duly assign, transfer, deliver, and pay over to such successor Trustee all monies or other property then held or subsequently received by such predecessor Trustee upon the trusts herein expressed.

5.1.3    Trust Continuance.  The death, resignation, incompetency or removal of the Trustee shall operate neither to terminate the Trust created by this Agreement nor to revoke any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by such Trustee. In the event of the resignation or removal of the Trustee, such Trustee shall (i) promptly execute and deliver any such documents, instruments, and other writing as may be necessary to effect the termination of such Trustee's capacity under this Agreement, and the conveyance of the Trust Estate then held by such Trustee to the temporary or successor trustee; (ii) deliver to the temporary or successor trustee all documents, instruments, records, and other writings relating to the Trust or Trust Estate as may be in the possession of such Trustee; and (iii) otherwise assist and cooperate in effecting the transfer and assumption of his obligations and functions by the temporary or successor trustee.

# ARTICLE VI

## SUPPLEMENT AND AMENDMENTS TO THIS AGREEMENT

6.1     Supplements and Amendments.  Subject to approval by a vote of the Beneficiaries holding the majority of Claim Amounts if sought by the Trustee pursuant to this Agreement, the Trustee may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provision of, this Agreement, or amendments thereto.

6.2     Notice of Form of Supplement and Amendments Requiring Vote or Consent.  A copy of each proposed amendment or supplement to this Agreement (or a fair summary thereof) shall be furnished to the Beneficiaries prior to the Trustee seeking the approval thereof by such vote of the Beneficiaries as described herein.

6.3     Notice and Effect of Executed Amendment.   Upon the execution of any declaration of amendment or supplement, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Agreement of the Trustee and the Beneficiaries shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

# ARTICLE VII

## PAYMENT OF ADMINISTRATIVE CLAIMS/FUNDING OF PLAN

7.1     Administrative Claims.  The Beneficiaries acknowledge and agree that for the Trust Assets to be transferred to the Trust as contemplated in this Agreement, it may be necessary that certain Administrative Claims incurred in the pending STM bankruptcy proceeding be paid.

# ARTICLE VIII

## MISCELLANEOUS

8.1     Title to Trust Estate.  No Beneficiary shall have title to any part of the Trust Estate.

8.2     Sales of Assets of the Trust Estate.  Any sale or other conveyance of any assets of the Trust Estate, or part thereof, by the Trustee made in accordance with the terms of this Agreement, shall bind the Beneficiaries and shall be effective to transfer or convey all right, title, and interest of the Trustee and the Beneficiaries in and to such asset of the Trust Estate.

8.3     Notices.  Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices shall be in writing and delivered by registered or certified

mail, return receipt requested, or by a hand or facsimile transmission (and confirmed by mail), in any such case addressed as follows:

       If to the Trustee:

           Jeremiah Foster
           7201 E Camelback Rd # 250
           Scottsdale, AZ 85251

       With a copy to:

           _____
           _____
           _____
           _____

To any Beneficiary, addressed to its latest mailing address as reflected on the U.S. Bankruptcy Court records at the time of Plan Confirmation.

       8.4    <u>Severability.</u>  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

       8.5    <u>Counterparts.</u>  This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.

       8.6    <u>Binding Agreement.</u>  All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustee and his respective successors and assigns and any successor Trustee, his respective successors and assigns, and the Beneficiaries, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver, or other instrument or action by any party hereto or any Beneficiary shall bind their respective heirs, personal representatives, successors and assigns.

       8.7    <u>Construction.</u>  Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neuter, if appropriate; words importing the singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

       8.8    <u>Execution by Facsimile or Email.</u>  Facsimile or e-mail transmissions of an executed original of this Trust Agreement and/or retransmission of any executed facsimile or email transmission shall be deemed to be the same as the delivery of an executed original.

STM LIQUIDATING TRUST AGREEMENT - 13

      8.9    Headings.  The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

      8.10    Governing Law.  Except to the extent that the Bankruptcy Code is applicable, this Trust Agreement shall be governed, construed, interpreted and enforced in accordance with the substantive laws of the State of Montana applied to agreements entered into and performed entirely within such State.

      8.11    Retention of Bankruptcy Court Jurisdiction.  The Bankruptcy Court shall retain original and exclusive jurisdiction as provided in the Plan over this Trust, the Trustee, and the Trust Assets, including without limitation the determination of all controversies and disputes arising under or in conjunction with this Trust Agreement.

      8.12    No Obligation to Register Trust.  The Trustee will have no obligation to register this Trust pursuant to any requirement of state law.

      8.13    Gender.  All personal pronouns, whether used in the masculine, feminine or neuter gender, shall include all other genders.

      8.14    Non-Avoidability of Trust.  The Debtor shall not raise, and hereby expressly waives, any claim or action to avoid this Trust Agreement, the Trust created hereby, and the transfer of the Trust Assets as described herein, as a preference, fraudulent transfer, post-petition transaction, or other similar claim.

      8.15    Further Assurances.  To the extent necessary, the Debtor agrees to execute and deliver to the Trustee such instruments to terminate the automatic stay imposed by 11 U.S.C. §362.  In addition, each party hereto shall execute all instruments and documents and take all actions as may be reasonably required to effectuate this Trust Agreement.

      8.16    Entire Agreement.  This Trust Agreement contains the entire agreement between the parties hereto with respect to the subject matter of this Trust Agreement and supersedes all prior understandings, agreements, representations, and warranties, if any, with respect to such subject matter.

      8.17    Attorney Fees.  If a party hereto or beneficiary hereof commences a legal proceeding to enforce any of the terms of this Trust Agreement, the prevailing party in such action shall have the right to recover reasonable attorney fees and costs from the other party to be fixed by the court in the same action.

[*Signature Page Follows*]

**IN WITNESS WHEREOF**, the Trustee has duly executed this Trust Agreement as of the day and year first above written.

TRUSTEE:
Trustee for the STM Liquidating Trust

_____
Jeremiah Foster

DEBTOR:
Shoot the Moon, LLC

By: _____
      Jeremiah Foster, Chapter 11 Trustee

2:15-bk-60979-WLH  Doc#: 1010-12  Filed: 06/12/17  Entered: 06/12/17 16:33:12  Page 15 of 15