# THIRD AMENDED DISCLOSURE STATEMENT

## INFORMATION CONCERNING THE DEBTOR AND THE CHAPTER 11 TRUSTEE'S PROPOSED PLAN

# SHOOT THE MOON, LLC

Debtor in Chapter 11 Case
No. 15-60979-11
In the United States Bankruptcy Court
for the District of Montana

October 6, 2017

David B. Cotner (Bar # 2386) David B. Cotner (Bar # 2386)
COTNER LAW, PLLC
2700 Radio Way
Missoula, MT 59808
Phone:  (406) 541-1111
Fax:    (406) 541-1122
Email:  dcotner@cotnerlaw.com

Trent N. Baker (Bar # 5935)
DATSOPOULOS, MacDONALD & LIND, P.C.
201 W. Main St. Ste. 201
Missoula, Montana 59802
Phone: (406) 728-0810
Fax:    (406) 543-0134
Email: tbaker@dmllaw.com

*Attorneys for Jeremiah Foster, the Chapter 11 Trustee of Shoot the Moon, LLC*

TABLE OF CONTENTS

INTRODUCTORY COMMENTS  ....................................................................5

ORGANIZATIONAL HISTORY, RECENT HISTORY AND ACTIVITIES…7

General....................................................................................................... 7

Factors Leading to Chapter 11 ............................................................. 9

Operations of the Business and Estate  .............................................. 9

PROPERTIES, ASSETS AND LIABILITIES OF THE DEBTOR .................16

Assets ....................................................................................................16

Valuations...............................................................................................18

Liabilities .................................................................................................18

ASSET DISPOSITIONS SINCE PETITION DATE .......................................20

PENDING AND THREATENED LEGAL PROCEEDINGS AND CLAIMS.24

SUMMARY OF THE PLAN ……….........................................................24

Classification and Treatment of Claims and Equity Security Interest Holders.27

Class 1 Administrative ......................................................................27

Class 2 Priority Unsecured Claims ..................................................28

Class 3 Tax Claims .......................................................................... 29

Class 4 General Unsecured Claims ................................................. 29

Class 5 General Unsecured Claims ................................................. 30

Class 6 Equity Interest Holders  ...................................................... 30

Treatment of Parties to Executory Contracts ..................................... 30

Unclassified Claims ............................................................................ 31

Means of Implementing the Plan ....................................................... 32

RETAINED RIGHTS- STM LIQUIDATING TRUST ...................................32

MEANS FOR EXECUTION OF THE PLAN ...................................................34

SEC Matters ...........................................................................................................35

Avoidance Actions and Other Litigation .........................................................35

Claims Objections ...............................................................................................36

THE "BEST INTERESTS OF CREDITORS" TEST .......................................36

COMPARATIVE LIQUIDATION ANALYSIS ..............................................37

PRESENT AND FUTURE MANAGEMENT ...................................................37

FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .................38

RISK FACTORS ...................................................................................................39

CONFIRMATION OF THE PLAN ...................................................................40

Voting Procedures ...............................................................................................40

Hearing on Confirmation ..................................................................................41

Treatment of Dissenting Classes of Creditors ...............................................41

Effect of Confirmation .......................................................................................41

Fees and Monthly Reports .................................................................................42

APPENDIX A - PROPOSED PLAN

APPENDIX B - [PROPOSED] ORDER APPROVING DISCLOSURE STATEMENT

APPENDIX C - LIST OF DEBTOR ENTITIES

APPENDIX D - SALE ORDER

APPENDIX E - TRUSTEE'S STATEMENT OF SALE

APPENDIX F - ESTATE ACCOUNTS AND DEPOSITS

APPENDIX G - TRUST CAUSES OF ACTION

APPENDIX H - ADMINISTRATIVE CLAIMS

APPENDIX I - PRIORITY UNSECURED CLAIMS

APPENDIX J - GENERAL UNSECURED CLAIMS

APPENDIX K - PENDING LAWSUITS

APPENDIX L - [PROPOSED] STM LIQUIDATING TRUST

APPENDIX M - CV OF JEREMIAH FOSTER

IMPORTANT! THIS DISCLOSURE STATEMENT CONTAINS INFORMATION WHICH MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PROPOSED PLAN. PLEASE READ THIS DOCUMENT WITH CARE.

TO THE CREDITORS AND OTHER PARTIES IN INTEREST IN THIS CHAPTER 11 CASE:

On October 21, 2015, ("Petition Date") Shoot the Moon, LLC commenced a voluntary reorganization proceeding with the filing of a voluntary petition under Chapter 11 of the United States Bankruptcy Code.  The Debtor's reorganization case is presently pending before the United States Bankruptcy Court for the District of Montana.

This Disclosure Statement contains information with respect to the Debtor and the proposed Plan (the "Plan"), attached hereto as Appendix A.  Pursuant to § 1125 of the Bankruptcy Code, it is being distributed to you along with a copy of the proposed Plan for the purpose of enabling you to make an informed judgment about the proposed Plan. Capitalized terms not defined herein have the meanings given to them, as the case may be, in Article II of the proposed Plan or the Bankruptcy Code. The Proposed Order of the Bankruptcy Court Approving this Disclosure Statement is reproduced in Appendix B to this Disclosure Statement. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation or endorsement of the Plan by the Bankruptcy Court.

THE ONLY REPRESENTATIONS THAT ARE AUTHORIZED OR WHICH MAY BE MADE CONCERNING THE DEBTOR, THE VALUE OF ITS ASSETS, OR THE PROPOSED PLAN ARE THE REPRESENTATIONS CONTAINED IN THIS

DISCLOSURE STATEMENT. THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN SUBJECTED TO AN AUDIT BY AN INDEPENDENT CERTIFIED PUBLIC ACCOUNTANT. FOR THAT REASON, NO WARRANTY OR REPRESENTATIONS ARE MADE THAT THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS WITHOUT INACCURACY. HOWEVER, GREAT EFFORT HAS BEEN MADE TO ENSURE THAT ALL SUCH INFORMATION IS FAIRLY PRESENTED.

This is a proposed Disclosure Statement. Upon approval by the Court of the Disclosure Statement, deadlines will be set for voting and/or objecting to the Plan. Even if you are not entitled to vote you may be entitled to object to confirmation.

The hearing on final approval of the Disclosure Statement and confirmation of the Plan shall be held on November 20, 2017, at 9:00 a.m. (Mountain Time). Parties may appear at the United States Bankruptcy Courthouse, Charles M. Pray Courtroom, 125 Central Avenue West, Great Falls, Montana. The Bankruptcy Court shall confirm the Plan if it meets the requirements contained in the Bankruptcy Code.

The Trustee urges that you accept the proposed Plan and that you timely return your completed ballot so that your vote will be counted.  IN ORDER TO BE COUNTED FOR PURPOSES OF SATISFYING THE BANKRUPTCY CODE REQUIREMENTS YOUR BALLOT OF ACCEPTANCE OR REJECTION AND ANY OBJECTION TO CONFIRMATION OF THE PLAN MUST BE RECEIVED AT THE ADDRESS INDICATED ON THE BALLOT NO LATER THAN 4:30 P.M. ON THE 13th DAY OF NOVEMBER, 2017.

# ORGANIZATIONAL HISTORY, RECENT HISTORY AND ACTIVITIES

## General

Debtor, Shoot the Moon, LLC ("Debtor" or "STM") was one of a number of separate entities created from 2006 to 2015 for the purposes of acquiring and operating Chili's and other restaurants under franchise agreements with Brinker International, Inc. ("Brinker"), the franchisor of a number of national chains. STM was formed in April, 2006. STM and related entities subject to this bankruptcy held real estate and conducted operations at the various restaurants.

Prior to the Petition Date, the Debtor, through approximately nineteen (19) separate entities operated eleven (11) Chili's restaurants, three (3) On the Border restaurants, and two (2) Moonshine Grill restaurants in Idaho, Montana, and Washington. Shortly before the Petition Date, the Debtor entities closed the three On the Border restaurants (located in Meridian and Boise, Idaho, and Great Falls, Montana), and the two Moonshine Grill restaurants (located in Helena and Great Falls, Montana). The On the Border restaurants were a former Brinker franchise and the Moonshine Grill restaurants were not franchise restaurants but were previously operated as Macaroni Grill restaurants, another former Brinker franchise. Certain Debtor entities (STM X and STM X Realty) once owned and operated Sonic restaurants and associated real property, which were sold in 2013 and 2014. One of

the Debtor entities, STM Grizzly, operated a cafeteria on Malmstrom Airforce Base which closed prior to the bankruptcy.

After January 1, 2014, Kenneth Hatzenbeller, John Bloemendaal and Greg Tierney were the equal members of STM and each of the related entities. Kenneth Hatzenbeller managed the financial affairs of the business enterprise from his office located at 1420 Marketplace, Great Falls, Montana, with his son, Lance Hatzenbeller, acting as the operations manager. The company employed regional managers as well as individual store managers. Kenneth Hatzenbeller testified that former members of STM entities included Jim Purdy, Dan Shannon, and Dennis P. Conner. Hatzenbeller testified that Jim Purdy's interest was purchased for $400,000 in 2005, prior to the acquisition of the Chili's restaurants. Hatzenbeller testified that Dan Shannon and Dennis P. Conner became members in 2006, and that Dan Shannon's interest was purchased from him for $100,000 in 2007. Dennis P. Conner's interest was redeemed by STM by agreement dated January 1, 2014. Kenneth Hatzenbeller, John Bloemendaal and Greg Tierney have each filed individual Chapter 7 bankruptcy proceedings in the United States Bankruptcy Court for the District of Montana, case numbers: 16-60090-7; 16-60059-7; and 16-60060-7, respectively. Kenneth Hatzenbeller has pending state and federal criminal charges relating to his STM activities.

On the eve of the bankruptcy, October 20, 2015, Articles of Merger were filed with Washington and Montana and Statements of Merger were filed with Idaho, which merged the nineteen (19) entities listed in Appendix C and transferred all assets into Debtor as the surviving entity.  Kenneth Hatzenbeller testified during his 2004 examination that the assets of the various entities had throughout their respective existences been commingled depending on the cash positions and needs of the various entities and restaurants.

## Factors Leading to Chapter 11

Prior to the Petition Date, the Debtor had committed to a rapid expansion and was in the process of acquiring and building a number of stores in 2009 when the economic downturn resulted in a significant downturn in revenues. The Debtor (including affiliates later merged into the Debtor) borrowed substantial funds from a number of lenders, including institutional lenders, private lenders and merchant cash advance companies.  Ultimately, the operations of the restaurants did not generate sufficient cash to service the debt and the Debtor defaulted on obligations and began closing stores, leading to this Chapter 11 case.

## Operations of the Business and Estate

On October 21, 2015, the Debtor commenced a bankruptcy case by filing a Chapter 11 petition under the United States Bankruptcy Code ("the Code") with the United States Bankruptcy Court for the District of Montana.

In a stipulation filed October 26, 2015, Debtor, the United States Trustee and five creditors agreed that "the spirit and intent of 11 U.S.C. § 1104(a)(2) w[ould] be served if the Court order[ed] the appointment of a Chapter 11 Trustee." The Court conditionally approved the appointment of Jeremiah Foster as Trustee on October 28, 2015, and thereafter appointed Jeremiah Foster as Trustee without condition on November 5, 2015.

The Debtor, through Trustee, operated the eleven (11) Chili's franchised restaurants in the following locations: Broadway, Boise, Idaho; Franklin, Boise, Idaho; Coeur D'Alene, Idaho; Idaho Falls, Idaho; Meridian, Idaho; Pocatello, Idaho; Twin Falls, Idaho; Helena, Montana; Great Falls, Montana; Downtown, Spokane, Washington; and Northtown, Spokane, Washington.

An Emergency Motion for Interim Post-Petition Financing was made on October 29. 2015 (Doc. 32), the Court issued an Interim Order on or about October 29, 2015 (Doc. 39) and on December 4, 2015, the Court entered its Final Order Authorizing Secured Post-Petition Financing On A Super Priority Basis And Granting Related Relief (Doc. 135), granting final approval for Trustee, on behalf of the Estate, to use of its cash collateral for operational purposes and to obtain from Western Alliance Bank a short-term emergency loan in the principal amount of $150,000 (the "Emergency Loan").

The Emergency Loan was necessary to make payroll and allow Trustee to carry on business operations in the short term, and to allow the Trustee time to investigate the Estate's financing needs and seek approval of longer term post-petition financing. The Emergency Motion recognized that the Estate would be unable to sustain the business operations solely with the use of cash collateral and that additional longer term financing would be necessary to supplement the business revenue in funding administrative expenses and the day-to day operational expenses of the business.  The Emergency Loan initially matured on January 4, 2016, but the parties agreed to extend and forebear until longer-term post-petition financing could be obtained.

On June 3, 2016, the Trustee filed a Motion for Longer-term Post-petition financing (Doc. 553), seeking a new loan of up to an aggregate principal amount of $1,300,000.00, to repay the Emergency Loan, and provide Trustee with additional financing needed to pay administrative expenses, continue the Estate's business operations, and allow Trustee to continue efforts to sell the Estate's restaurant businesses as going concerns.  On or about June 27, 2016, the Court issued its Final Order approving the second loan ("Second Financing Order") (Doc. 644).  STM used these funds, in addition to operational revenues, to pay day to day operating expenses and otherwise finance the operation of the business, pay administrative claims and thereby continue operation of the Estate's restaurant business to allow the Trustee to preserve value by selling the restaurant businesses as a going concern.

Following his appointment, the Trustee marketed the STM assets in an effort to maximize recovery for all creditors and other interested parties. In order to maximize the value of the Debtor's estate for creditors, and to preserve jobs, the Trustee in consultation with professionals and other parties in interest, including Brinker and the Debtor's primary secured creditors, determined that a process for the sale of the Debtor's restaurant business as a going concern would best meet those goals. The Trustee determined that a more viable alternative to the sale of the assets did not exist.

The Trustee, with the help of business broker Rob Hunziker of Advanced Restaurant Sales, Mark Macek of Macek Companies, Inc. and Clay Anderson of Colliers Paragon, LLC, professionals hired by Trustee pursuant to the Court's approval (Doc. 162, 173, 175, 258), identified Paradigm Restaurants, L.C., a Utah limited liability company ("Buyer"), as the best potential purchaser of the Debtor's assets through a robust marketing and bidding process.

Trustee and business broker Rob Hunziker of Advanced Restaurant Sales assembled a secure online data room containing the information available regarding the Chili's businesses and related assets and began a nationwide marketing and bidding process in February of 2016. Approximately 30,000 individuals, private equity firms, multi-unit restaurant operators, in the region and throughout the United States and internationally, were notified and asked to participate in the bidding process. Additionally, Brinker was notified and its current franchisees and potential

AMENDED DISCLOSURE STATEMENT                                              12

franchisees were invited to bid.  Thirty-four (34) potential buyers registered, executed confidentiality agreements and reviewed the available materials.  Three (3) of the registered buyers were presented by Brinker as current franchisees within its system that had shown an interest in the Debtor's assets.  Prospective bidders who signed the confidentiality agreements were required to show the operational and financial capability to own and operate the 11 Chili's restaurants before they were allowed access to the files.

Trustee established a "call for offers date" of March 31, 2016, which was later extended a week to accommodate a couple of late entrants to the process.  Upon reaching the call for offers deadline, Trustee had received four (4) bids, two (2) from Brinker franchisees and two (2) from outside the Brinker system.  Three (3) of the bidders presented offers for both the Chili's business enterprise and real estate.  On April 15, 2016, the Trustee requested each of the bidders to submit their best and final proposal for consideration.  From that it was determined that the offer of Buyer was clearly the highest and best offer.  Buyer further increased its offer after subsequent negotiations with Trustee.  In the months that followed, Brinker performed a rigorous review of the Buyer's financial and operation capacity and ultimately approved the Buyer.

Trustee and Buyer executed an Asset Purchase Agreement and three Commercial Real Estate Buy-Sell Agreements dated July 26, 2016 (collectively the

AMENDED DISCLOSURE STATEMENT                                                          13

"Sale Agreement"), and copies of each were submitted on July 29, 2016 for Court approval with the Trustee's Motion for Approval of Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests ("Sale Motion") (Doc. 743). Subject to Court approval, the Sale Agreement provided for the Sale of the assets to Buyer under the terms and conditions stated therein. Trustee also filed a Motion to Assume and Assign (to Buyer) Unexpired Leases and Executory Contracts ("Motion to Assume and Assign ") (Doc. 767) and entered into stipulations with counter-parties to certain assumed and assigned contracts (Doc. 806 – 810, 820 and 822)

A number of parties filed objections to the Sale Motion. The Sale Motion was heard on September 15, 2016 (Doc. 825). By the date of the hearing, or shortly thereafter, all objections except that of the U.S. Trustee were withdrawn or resolved by stipulation, including a stipulation between the Trustee and Secured Creditors (Doc. 808), and a stipulation between the Trustee, Secured Creditors and Unsecured Creditors Committee (Doc. 835). Notwithstanding the U.S. Trustee's objection, on September 26, 2016, the Court issued an Order approving the sale, the stipulations between the Trustee, Secured Creditors and Unsecured Creditors Committee, and the Trustee's Motion to Assume and Assign and related stipulations ("Sale Order") (Doc. 838), attached hereto as Appendix D. Further information regarding the Sale is

AMENDED DISCLOSURE STATEMENT                                                      14

contained in the Sale Motion, Trustee's Motion to Assume and Assign, the various stipulations and the Sale Order.

The Sale closed on October 28, 2016 and the proceeds were disbursed pursuant to the Sale Order and on November 18, 2016, the Trustee filed his Statement of Private Sale pursuant to Rule 6004(f) along with an itemized statement of the property sold and the price received for each item or lot or for the property as a whole were sold in bulk (Doc. 886), attached hereto as Appendix E.

Debtor also owned and was the beneficiary of a life insurance policy ensuring Kenneth Hatzenbeller.  The policy was a New York Life Insurance Company Policy, and provides death benefit of $2,000,000.  The policy had no or limited cash value from New York Life, but Trustee obtained a third-party offer to purchase the policy for net proceeds of $10,000.  Trustee filed a motion for approval of the sale (Doc. 904), which was granted by the Court (Doc. 922).

STM maintains its financial records on a calendar year basis. STM's monthly financial statements filed with the Bankruptcy Court and the U. S. Trustee's office since the date of filing have not been examined by Certified Public Accountants.

The Trustee has used best efforts to disclose all known claims and interested parties, and has used best efforts to disclose that such claims and the rights of interested parties shall be determined through the bankruptcy process. The Trustee herein expressly makes no representations or warranties with respect to STM's assets

and liabilities other than that they are true and correct to the best of STM's knowledge and as expressed on the bankruptcy petition and schedules.

<u>PROPERTIES, ASSETS AND LIABILITIES OF THE DEBTOR</u>

**<u>Assets</u>**

Most of Debtor's assets, including Debtor's secured assets, were sold pursuant to the Sale or otherwise disposed of since the Petition date as described above and set forth below in the section titled "Asset Dispositions Since Petition Date."

The remaining assets are comprised of certain accounts and claims of STM. Debtor maintained operating accounts for each of the Chili's restaurants. The operating accounts were not included in the Sale but were subject to the super-priority lien of Western Alliance Bank pursuant to the Second Financing Order (Doc. 644). By the time of the Sale, STM's expenses had exceeded revenues for a number of months and STM was using supplementing operational revenues with funds advanced under the Second Financing Order to pay day to day operating expenses and otherwise finance the operation of the business, pay administrative claims and continue operation of the restaurant business.

Upon closing, Trustee received the Sale proceeds then disbursed those proceeds to the closing agent for further disbursement according to the terms of the Sale Agreement and Sale Order. As of September 15, 2017, Trustee maintains on behalf of Debtor four (4) separate accounts at Wells Fargo Bank with total deposits of

$598,778.70, as set forth on Appendix F. The funds in these accounts are subject to administrative claims and otherwise restricted as set forth below.

One account contains $438,449.93 in funds turned over by Heartland Payment Systems, Inc. which funds are subject to a Stipulation between Trustee and Cap Call, LLC (Doc. 804), resolving Trustee's Motion for Turnover and Cap Call, LLC's objection thereto (Doc. 405, 433). These funds will be held in a segregated account pending outcome of further proceedings per Order of the Court (Doc. 805).

STM's remaining assets include the Trustee and estates' rights to bring avoidance actions, claims under Chapter 5 of the Bankruptcy Code and other claims and litigation. The Trustee has not yet completed its investigation with regard to pre-petition transactions including preferences, fraudulent conveyances, claims against insiders, professional negligence claims against accountants and attorneys, negligence claims against directors and officers, claims against financial institutions and lenders for usury and breach of loan commitments, claims for recovery of estate assets and the like. A description of the claims known to date is set forth on Appendix G.

Investigation regarding the claims is ongoing and further investigation of the claims is necessary. Trustee's Application to Approve Employment of the law firm of Datsopoulos MacDonald & Lind, P.C. in its capacity as attorney for the estate to investigate and, if appropriate and beneficial to the estate, to pursue claims against third parties on behalf of the estate (Doc. 524) was approved by the Court (Doc. 905).

AMENDED DISCLOSURE STATEMENT                                                    17

## Valuations

The assets of the Debtor as reflected in the balance sheet as of the Petition Date were $10,767,175. None of these assets were formally appraised for purposes of the bankruptcy schedules.  Trustee was aware that certain creditors obtained appraisals of real property owned by the Debtor.  Trustee obtained various opinions of value for certain assets but no formal appraisals.

The approximate values of the liquor licenses owned by Debtor were determined from the State of Idaho's and State of Montana's records of prior sales in each location. The approximate values of the furniture, fixtures and equipment at each of the Chili's restaurants were obtained by Trustee from auction houses.

Ultimately, the values of the above assets were determined through the efforts of Trustee and professionals to market and sell the assets.

## Liabilities

The Debtor's listed liabilities as of the Petition Date of October 21, 2015, were approximately $34,852,821.  The assets of the Debtor were disposed of pursuant to the Sale, claims secured by those assets were partially satisfied, and the balance of those claims are now unsecured.  There are no longer any secured claims other than interests asserted in funds turned over by Heartland Payment Systems, Inc.

As of September 15, 2017, the Estate was subject to administrative expenses totaling $528,572.86, as set forth on attached Appendix H.  These include fees earned

by professionals and approved by the Court but not yet paid, and fees earned by professionals but not yet approved or paid.

In addition to administrative expenses, the Estate is subject to filed and scheduled priority unsecured claims totaling $2,008,520.02, including claims of STM employees in the amount of $473,313.27 and claims of taxing authorities in the amount of $1,535,206.75. However, a substantial portion of the filed and scheduled priority unsecured claim amounts have been satisfied or partially satisfied by application of sale proceeds and other post-petition advances. The current balances owed on priority unsecured claims now total $515,693.85, including claims of STM employees ($214,177.94) and taxing authorities ($301,515.91), as set forth on attached Appendix I. The balances due as set forth on Appendix I will be established pursuant agreement of the claimants or claim objections filed and served concurrently with this Third Amended Disclosure Statement.

The general unsecured claims now total $48,417,834, as set forth on Appendix J and include: original general unsecured claims in the amount of $6,382,835.88; estimated unsecured balance of previously secured claims in the amount of $14,993,997.41; and unsecured claims of STM Members in the amount of $27,041,001.00. The disclosure of these claims by Trustee is not an admission of their validity or amount. Trustee reserves all rights to contest the validity, nature and amount of these claims and these claims remain subject to the claims objection

AMENDED DISCLOSURE STATEMENT                                                    19

process, which will be carried out by the trustee of the liquidating trust as set forth below.

<u>ASSET DISPOSITIONS SINCE PETITION DATE</u>

After the petition date, the Trustee sought Court approval to sell an Idaho State liquor license associated with the former On the Border restaurant location at Spectrum, in Boise, Idaho, which was closing prior to the petition date (Doc. 364). The Court approved the sale on September 12, 2016 (Doc. 798).  Upon closing proceeds shall be disbursed pursuant to the Court's Order.

Trustee attempted without success to find buyers for other assets (furniture, fixtures and equipment) associated with the three former On the Border locations at: Meridian, Idaho; Spectrum, Boise, Idaho; and Great Falls, Montana.  Trustee stipulated to Stay Relief with the creditors holding priority security interests in the assets located at Meridian, Idaho and Spectrum, Boise, Idaho (Doc. 318, 384) and the Court approved those stipulations (Doc. 362, 512).

With respect to assets located at the former On the Boarder in Great Falls, Montana, First Interstate Bank filed motions to modify the stay to pursue its non-bankruptcy remedies against:  Montana All-Beverage Liquor License No. 02-401-1164-002 (Doc. 730); all inventory, chattel paper, accounts, equipment and general intangibles at that location (Doc. 734); and the real property located at 1400 Market

Place Drive, Great Falls, Montana (Doc. 736).   There were no objections to the foregoing motions and each were granted (Doc. 768, 769, 770).

On July 29, 2016, Trustee filed the Sale Motion (Doc. 743) seeking leave to sell assets associated with the Chili's restaurants.   Debtor's assets subject to the Sale were comprised of the eleven (11) operating Chili's restaurants and associated assets, including: real property; improvements; leasehold interests; liquor licenses; franchise agreements; furniture, fixtures and equipment; inventory and accounts.   Three (3) Chili's restaurants are operated at premises owned by the Debtor (collectively, the "Owned Restaurants"): Pocatello, Idaho; Great Falls, Montana; and Helena, Montana.

The real property, improvements, franchise agreements, furniture, fixtures and equipment, and inventory associated with the Owned Restaurants were sold to the Buyer pursuant to the Sale Order (Doc. 838).   The other eight (8) Chili's restaurants were operated at premises leased pursuant to one or more leases or subleases (collectively, the "Leases" and "Leased Restaurants").   Brinker is the franchisor under eleven (11) separate Franchise Agreements pursuant to which the Debtor operated each of its Chili's restaurants.   The Franchise Agreements and Leases are further described in Trustee's Motion to Assume and Assign Unexpired Leases and Executory Contracts; and Notice (Doc. 767).   The Unexpired Leases and Executory Contracts, including the Franchise Agreements, were assumed by Trustee and assigned to the Buyer pursuant to the Sale Order (Doc. 838).

Debtor's real property in Pocatello, Idaho includes a building housing the Chili's restaurant facility and all associated improvements, furniture, fixtures and equipment.  Debtor's real property in Helena, Montana, includes a building housing the Chili's restaurant facility and a separate restaurant facility that is the former location of a Moonshine Grill, leased by Debtor to Tom Lee, Inc., which operates a Japanese restaurant known as Nagoya on the premises, a shared banquet facility between the two restaurant facilities, and all associated improvements, furniture, fixtures and equipment.  Further information regarding the Nagoya lease is set forth in the Trustee's Motion to Assume Unexpired Lease and Notice (Doc. 501).  The real property, improvements and associated assets are further described in the Sale Agreement (Doc. 743-1) and were purchased by Buyer pursuant to the Sale Order (Doc. 838).

Debtor owned eight (8) liquor licenses in Montana and Idaho.  Six (6) of the licenses were Idaho liquor licenses which were used at the Chili's restaurants located at: Broadway, Boise, Idaho; Franklin, Boise, Idaho; Coeur D'Alene, Idaho; Idaho Falls, Idaho; Meridian, Idaho; and Pocatello, Idaho.  These six (6) licenses were sold to the Buyer pursuant to the Sale Order (Doc. 838).  The seventh, used at the Twin Falls, Idaho Chili's was leased from a third party, and that lease was assigned to Buyer as part of the Sale.  The eighth license was used at the now shuttered On the Border restaurant at Spectrum in Boise, Idaho and was sold as set forth above.

AMENDED DISCLOSURE STATEMENT                                                        22

Debtor operated the Great Falls and Helena, Montana Chili's with liquor licenses owned by third parties, Hatz, LLC and Hatz II, LLC, and used pursuant to concession and leases agreements. Trustee asserted claims against those licenses and their respective owners based on contract and constructive trust. Those claims were settled and the settlements were approved by the Court (Doc. 782, 783), resulting in the inclusion of those licenses in the Sale to Buyer. As set forth above, the Trustee is entitled to but has not yet received certain proceeds from the sale of those licenses. Alcoholic beverage sales in the State of Washington are pursuant permits which are issued and renewed on an annual basis but are not subject to sale and have no inherent value.

Debtor's inventory consisted primarily of food and beverage supplies. Debtor's inventory was included in the Sale to Buyer at fair market value determined as of closing. Debtor also owned a 2008 Chevrolet Silverado Truck and 12' single axle trailer, which were utilized in the Chili's restaurant business and were included in the Sale to Buyer.

Debtor also owned and was the beneficiary of a life insurance policy ensuring Kenneth Hatzenbeller. The policy was a New York Life Insurance Company Policy and provides death benefit of $2,000,000. The policy had no or limited cash value from New York Life, but Trustee obtained a third-party offer to purchase the policy

for net proceeds of $10,000.  Trustee filed a motion for approval of the sale (Doc. 904), which was granted by the Court (Doc. 922).

## PENDING AND THREATENED LEGAL PROCEEDINGS AND CLAIMS

As disclosed above, descriptions of the potential claims and legal proceedings presently known to be subject to assertion on behalf of the Estate and Trustee are set forth on attached Appendix G.  A number of legal actions were filed against Debtor entities by a number of merchant cash advance lenders and information regarding those legal actions and related proofs of claim is set forth in Attached Appendix L. Debtor was also the respondent in a discrimination claim before the U.S. Equal Employment Opportunity Commission, EEOC Charge No.551-2015-01592, which closed the matter based upon respondent's dissolution and issued a 90-day notice of claimant's right to sue on March 30, 2016.  Trustee is unaware of any subsequent proceedings regarding the EEOC matter.

## SUMMARY OF THE PLAN

The Plan recognizes the Sale of Debtor's assets pursuant to the Sale Motion and Order and the partial payment of administrative claims and secured claims from the Sale proceeds.  Secured claims were paid in the agreed amounts upon closing of the Sale of Debtor's assets pursuant to the Sale Motion and Order.  The Sale of STM's assets did not generate sufficient funds for full payment of administrative claims, allowed secured claims, or for any distribution to unsecured general claimants.  The

Plan will treat the unpaid balance of administrative claims, secured claims and certain priority unsecured claims as general unsecured claims.  Any creditor with a lien that no longer has any value will become a general unsecured creditor.  The Plan contemplates transfer of the Estate's remaining assets to the STM Liquidating Trust and payment of allowed priority and general unsecured claims by the STM Liquidating Trust depending on its success in the Trust's litigation of the causes of action and claim objections.

Upon confirmation of the Plan, the rights of the Estate and Trustee to bring avoidance actions, claims under Chapter 5 of the Bankruptcy Code, and other claims and litigation, including preferences, fraudulent conveyances, claims against insiders, professional negligence claims against accountants and attorneys, negligence claims against directors and officers, claims against financial institutions and lenders for usury and breach of loan commitments, claims for recovery of estate assets, claims against insurers, and the like ("Trust Causes of Action") will be transferred into the STM Liquidating Trust.  The Trustee has not yet completed his investigation with regard to the Trust Causes of Action.  Preliminary investigation has identified claims set forth on attached Appendix G.  Further investigation of these and additional claims and litigation of all claims shall be performed by the STM Liquidating Trust.

The Plan provides that all administrative claims will be paid on or before the Effective Date of the Plan, except to the extent that holders of such claims have agreed

to a different treatment.  Subject to the agreement of the holders of such claims, any administrative claims not paid on or before the Effective Date will become Class1 Administrative Claims.

The Plan provides that allowed claims of former STM employees not paid on or before the Effective Date will be Class 2 Priority Unsecured Claims.  Certain priority tax claims were paid in whole or in part from the proceeds of the Sale.  Real estate taxes which operated as a lien upon real property of Debtor were paid from the proceeds of the Sale of Debtor's assets.  The State of Idaho Tax Commission received an agreed upon amount from the proceeds of the sale of Debtor's assets for payment of taxes which operated as a transfer restriction upon the Idaho liquor licenses which were subject to the Sale. The balance of priority tax claims will be paid on or before the Effective Date of the Plan, except to the extent that holders of such claims have agreed to a different treatment.  Subject to the agreement of the holders of such claims, any priority tax claims unpaid as of the Effective Date will become Class 3 Tax Claims.

The Plan provides that claims of the original general unsecured creditors will be Class 4 General Unsecured Claims.  The claims of general unsecured creditors that received distributions from the Sale will be Class 5 General Unsecured Claims.  Class 6 will consist of the claims of members with equity interests in the Debtor.

## Classification and Treatment of Claims

The Plan establishes six (6) classes of claims and interests. If the Plan is confirmed by the Bankruptcy Court and becomes effective, the class into which a claim falls will determine the manner in which such claim will be treated. The classes of claims established in the Plan are summarized below:

Class 1 - Administrative Claims

Class 2 - Priority Unsecured Claims

Class 3 - Tax Claims

Class 4 - General Unsecured Claims

Class 5 – General Unsecured Claims (claimants that received distribution from Sale)

Class 6 – Equity Interest Holders

All claims, as defined in §101(5) of the Bankruptcy Code, against the Debtor, other than administrative claims and priority tax claims, are classified as set forth herein.  A claim or interest is in a particular Class only to the extent it qualifies within the definition of such Class and is in a different Class to the extent it qualifies within the definition of such different Class.

## Class 1 - Administrative Claims.

Class 1: Class 1 consists of claims for balances of administrative claims unpaid as of the Effective Date of the Plan.  Class 1 claimants shall share pro-rata in the proceeds of the STM Liquidating Trust.  The Plan proposes to treat Class 1 claimants

in a manner different from that set forth in § 1129(a)(9) of the Bankruptcy Code. Class 1 claimants that vote in favor of the Plan will be deemed to have consented to such treatment.

## Class 2 – Priority Unsecured Claims

Class 2: Class 2 consists of the unsecured claims entitled to priority under Bankruptcy Code section 507(a), other than claims under 507(a) (2) and (8). Class 2 includes claims of Debtor's employees for wages and paid time off unpaid as of the Effective Date of the Plan, capped at a maximum $12,475.00 each.  Many filed and scheduled employee claim amounts have been satisfied or partially satisfied by post-petition advances and the Trustee's determination of balances due as of October 6, 2017 are set forth on Appendix I.  Objections to employee claims in excess of the amounts set forth in Appendix I will be filed and served on claimants along with this Third Amended Disclosure Statement and those objections will be set for hearing on the same day as the hearing on confirmation of the Plan.  Employees should read the objections carefully.  To the extent allowed after the claim objection process and related litigation, Class 2 claimants shall, pursuant to § 1129(a)(9)(B) of the Bankruptcy Code, receive from the proceeds of the STM Liquidating Trust, after payment of allowed Class 1 claims, deferred cash payments of a value, as of the Effective Date of the plan, equal to the allowed amount of such claim.  The payments shall be made within three years of the Effective Date with interest at the federal

judgment rate. If the claims are not paid as set forth above, the case shall be subject to conversion to Chapter 7.

## **Class 3 – Tax Claims**

Class 3: Class 3 consists of claims for balances of priority tax claims unpaid as of the Effective Date of the Plan. Class 3 claimants shall share pro-rata in the proceeds of the STM Liquidating Trust after payment of allowed Class 1 and 2 claims. The Plan proposes to treat Class 3 claimants in a manner different from that set forth in § 1129(a)(9) of the Bankruptcy Code. Class 1 claimants that vote in favor of the Plan will be deemed to have consented to such treatment.

## **Class 4 – General Unsecured Claims**

Class 4: Class 4 consists of the claims of general unsecured creditors that filed proofs of claim prior to the claims bar date and secured creditors that filed proofs of claim prior to the claims bar date but did not receive any distribution from the proceeds of the Sale. Class 3 claims are subject to favorable treatment over Class 5 claim, pursuant to the terms of the Stipulation filed on September 21, 2016 between the Official Committee of Unsecured Creditors, certain Secured Creditors and the Trustee (Doc. 835) which was approved by the Court in the Sale Order (Doc. 838). To the extent allowed after the claim objection process and related litigation, Class 4 claimants shall share pro-rata in the proceeds of the STM Liquidating Trust after payment of allowed Class 1, 2 and 3 claims.

AMENDED DISCLOSURE STATEMENT                                      29

## Class 5 – General Unsecured Claims

Class 5: Class 5 consists of the claims of general unsecured creditors that received distributions from the proceeds of the Sale in partial satisfaction of their secured claims to the extent they submit amended proofs of claim for general unsecured claims in the amount of their deficiency claims following the Sale. To the extent allowed after the claim objection process and any related litigation, Class 5 claimants shall share pro-rata in in the proceeds of the STM Liquidating Trust with Class 4 claimants after payment of allowed Class 1, 2 and 3 claims and after Class 4 claimants receive the first 25% of any distribution, pursuant to the terms of the Stipulation filed on September 21, 2016, between the Official Committee of Unsecured Creditors, certain Secured Creditors and the Trustee (Doc. 835) which was approved by the Court in the Sale Order (Doc. 838).

## Class 6 – Equity Interest Holders

Class 6: Class 6 consists of the members holding equity interests in the Debtor. Equity Interest Holders shall receive no distributions under the Plan.

## Treatment of Parties to Executory Contracts

On the Effective Date, all executory contracts and unexpired leases of the Debtor not assumed and assigned pursuant to the Sale Order will be deemed rejected in accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code.

All proofs of claim with respect to claims arising from the rejection pursuant to the Plan of the rejected contracts and/or leases, or any previously rejected leases, if any, which are subject to the provisions of Bankruptcy Code §502(b)(6), must be filed with the Clerk of the Bankruptcy Court and served upon counsel for the Trustee within thirty (30) days after the date of entry of the Confirmation Order.  Any claims arising from the rejection of executory contracts or unexpired leases that become allowed claims are classified and shall be treated as Class 4 – General Unsecured Claims.

## **Unclassified Claims**

Pursuant to 11 U.S.C. §1123(a)(l) of the Bankruptcy Code, administrative expense claims and priority tax claims against the Debtor are not classified for purposes of voting on, or receiving distributions under this plan and holders of such claims are not entitled to vote on this plan, except to the extent that holders of such claims have agreed to treatment different than the requirements set forth in 11 U.S.C. § 1129(a)(9) of the Bankruptcy Code.   Certain approved administrative claims, priority tax claims, and secured claims have been or will be paid as set forth in the Sale Order.  The remaining administrative claims and priority tax claims will be paid on or before the Effective Date of the Plan except to the extent holders of such claims have agreed to a different treatment.  Any remaining assets and funds remaining from

the Sale after distribution of the above sums shall be distributed to the STM Liquidating Trust for distribution pursuant to the terms of the Plan and Trust.

**Means of Implementing the Plan**

The Trustee anticipates the Sale of Debtor's assets and the proceeds of the STM Liquidating Trust will fund the Chapter 11 Plan, as more specifically set forth below. On the Effective Date all remaining assets of the Estate will be transferred to the STM Liquidating Trust.  Within a reasonable time after the Effective Date, Trustee will seek a final decree closing the case.  On the Effective Date, the Official Committee of Unsecured Creditors will be disbanded and its counsel relieved of further obligation.

<u>RETAINED RIGHTS- STM LIQUIDATING TRUST</u>

If the Plan is confirmed, upon the Effective Date any remaining assets of the Estate will be transferred to and paid into the STM Liquidating Trust. A copy of the proposed Trust Agreement of said STM Liquidating Trust is attached hereto as Appendix L.  The Effective Date of the Plan shall be thirty (30) days after the date the Plan is confirmed.

The beneficiaries of the STM Liquidating Trust shall be the priority and general unsecured creditors of STM who have allowed claims ("Beneficiaries"). The trustee of the STM Liquidating Trust ("Liquidating Trustee") shall be a representative of the Estate responsible for administration, litigation and resolution of claims, and distribution to creditors holding allowed claims under the terms of the Plan and the

Trust. At the discretion of the Liquidating Trustee and consistent with the terms of the Plan regarding distributions, the STM Liquidating Trust may distribute the proceeds thereof, net of reserves for the future administrative costs of the STM Liquidating Trust, and future litigation expenses, including the requirement to defend appeals, may be paid over to the Beneficiaries as determined by the trustee.

Creditors and insiders who are the recipients of avoidable transfers under Chapter 5 of the Bankruptcy Code may not receive distributions as provided for under Section 502 of the Bankruptcy Code. However, there is no guarantee that any collection efforts or litigation on behalf of the Trust will be successful, or even if successful, if there will be any results produced beneficial to the Trust estate.

The STM Liquidating Trust and the Liquidating Trustee shall reserve the right to make partial or interim distributions if there are substantial delays in the resolution of claims objections, so long as the disputed claims are prudently reserved for in the discretion of the Liquidating Trustee.

The Liquidating Trustee shall be compensated at a rate not to exceed 3% of disbursements from and after the Effective Date of the Plan, through the earlier of (i) the Termination Date of the Trust, (ii) the appointment of a new trustee for the Trust or (iii) the resignation of the Liquidating Trustee. Such disbursements shall not include the value of assets initially transferred from the Estate to the STM Liquidating Trust, which have already been the subject of Trustee applications for compensation.

The Liquidating Trustee shall hire counsel and other professionals to assist in fulfilling Liquidating Trustee's duties.  The initial Liquidating Trustee, if the Plan is confirmed, shall be Jeremiah Foster.

The STM Liquidating Trust shall also be responsible for preparing and filing federal and state tax returns for each tax year the bankruptcy Estate or Trust is in existence, and the final return for the bankruptcy Estate.  For the benefit of the STM Liquidating Trust the STM Liquidating Trust may, at the discretion of the Liquidating Trustee, amend federal and state tax returns for prior tax years.

Oversight of the STM Liquidating Trust and Liquidating Trustee shall be provided by an oversight committee consisting of representatives of the three (3) general unsecured claimants holding the largest general unsecured allowed claims who are not the subject of Trust Causes of Action.

## MEANS FOR EXECUTION OF THE PLAN

The means for execution of the Plan are set forth in Articles V and VI of the Plan.  Pursuant to those Articles, the Debtor, Trustee and the STM Liquidating Trust shall perform acts and make payments after the Plan's Effective Date. The Effective Date of the Plan shall be thirty (30) days after confirmation of the Plan.  Payments will be made at various times after Confirmation.

On the Effective Date, the Trustee will transfer all assets as set out previously to the STM Liquidating Trust, which shall perform the obligations of the Trustee under

AMENDED DISCLOSURE STATEMENT                                                    34

the Plan. The Liquidating Trustee shall assume obligations under the Plan to resolve all claims of creditors and interest holders, file tax returns, file a final statement of indebtedness and obtain a final decree closing the reorganization case.

## SEC Matters

The Debtor is not a public company.

## Avoidance Actions and Other Litigation

The right to bring avoidance actions and other litigation will be transferred into the STM Liquidating Trust as a result of the confirmation of the Plan, to be pursued by the Liquidating Trustee as a representative of the Estate.  These Trust Causes of Action, include without limitation, avoidance actions, claims under Chapter 5 of the Bankruptcy Code, and other claims and litigation, such as preference claims, fraudulent conveyance claims, claims against insiders, professional negligence claims against accountants and attorneys, negligence claims against directors and officers, claims against financial institutions and lenders for usury and breach of loan commitments, claims for recovery of Estate assets and the like. The Trustee has not yet completed his investigation with regard these claims and the STM Liquidating Trust and Liquidating Trustee will assume the right and obligation to investigate, prosecute and settle the Trust Causes of Action.

**Claims Objections**

The Chapter 11 Trustee has filed and served concurrently herewith objections to certain employee claims. Employees should read those objections carefully. Additional claims objections will be filed by the STM Liquidating Trust after further investigation following the Effective Date and up to one year following recovery by the STM Liquidating Trust of funds sufficient to make distributions to the class of claims subject to objection.

THE "BEST INTERESTS OF CREDITORS" TEST

If the Bankruptcy Court were to find at the hearing on confirmation of the Plan that the holders of claims and interests will receive or retain under the Plan property of a value as of the Effective Date of the Plan that is not less than the amount that such holders would receive or retain if the assets of Debtor were liquidated under Chapter 7 as of such date, then the requirements set forth in 11 U.S.C. § 1129(a)(7)(A)(ii) of the Bankruptcy Code, commonly referred to as the "Best Interests of Creditors" test, will be satisfied. This requirement must be satisfied with respect to a class of claims or interests only if less than all holders of claims or interests in such class have accepted the Plan.

The Trustee has determined and believes that as of the date of this Disclosure Statement, the Plan satisfies the "Best Interests of Creditors" test.

## COMPARATIVE LIQUIDATION ANALYSIS

The Trustee believes that the transfer of the remaining assets of the Debtor and Estate to the STM Liquidating Trust and the pursuit of claims by the STM Liquidating Trust and Liquidating Trustee will generate proceeds in excess of any amounts that could be achieved should this case be converted to a case under Chapter 7 of the Bankruptcy Code.  Subject to the 3% limitation on Liquidating Trustee compensation set forth above, the compensation of the Liquidating Trustee will not exceed that of a Chapter 7 Trustee.  The expenses of the STM Liquidating Trust will be less than those likely to be incurred in conversion to a Chapter 7 because the Chapter 7 Trustee and professionals would have to expend substantial time and incur substantial expense familiarizing themselves with the history, operations, finances and creditors of the Debtor, evaluating creditor claims and identifying and investigating Trust Causes of Action

## PRESENT AND FUTURE MANAGEMENT

The Trustee will resign as Trustee of the Estate on the Effective Date.  It is proposed that Jeremiah Foster shall then be the initial Liquidating Trustee of the STM Liquidating Trust.  Jeremiah Foster, the proposed initial Liquidating Trustee, has served as Chapter 11 Trustee of the Estate, is familiar with the history, operations, finances and creditors of the Debtor and has already completed an initial evaluation of creditor claims and an initial investigation of Trust Causes of Action.  A copy of

Jeremiah Foster's CV is attached hereto as Appendix M. Remaining Estate assets shall be transferred to the STM Liquidating Trust, which shall perform the obligations of the Trustee under the Plan, including resolution of claims of creditors and interest holders, pursuit of Trust Causes of Action, filing of tax returns, filing of a final statement of indebtedness and obtaining a final decree closing the case. Oversight of the STM Liquidating Trust and Liquidating Trustee shall be provided by an oversight committee consisting of representatives of the three (3) general unsecured claimants holding the largest general unsecured allowed claims who are not the subject of Trust Causes of Action.

<u>FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN</u>

The Plan will impact various creditors differently, depending on the nature of their claims, their taxpayer status, their accounting methods and other variables. Creditors and the equity interest holders should consult with their own independent tax advisors regarding the tax impact of the Plan upon their individual circumstances. It is believed that the Sale of STM's assets in the tax year 2016 was a taxable event, however STM is a pass-through entity, so any tax will accrue to the members. Trustee is unable to provide a final estimate of any federal and state taxes at this time. Based upon the initial tax analysis conducted by the tax accountant retained by Trustee, it appears highly likely that the Sale will generate an overall tax loss as a result of the Sale and that no overall gain on the Sale will occur as a result. Trustee also believes

that Debtor incurred substantial net operating losses which will preclude any income tax liability.

RISK FACTORS

The Plan and payments to creditors thereunder are based on a number of assumptions. First, after distribution of Sale proceeds and payment of the secured, administrative and priority claims pursuant to the Sale Order, there will likely be no funds remaining for distribution to the STM Liquidating Trust. If funds remain from the sale of the Debtor's assets, after payment of these sums, such amount shall be distributed to the STM Liquidating Trust for ultimate distribution pursuant to the terms of the Plan and the STM Liquidating Trust.

The costs of the claims objection process, and the investigation and pursuit of Trust Causes of Action and other administrative costs of the STM Liquidating Trust are unknown, will be paid from the recovery from Trust Causes of Action and will diminish amounts to be distributed to the priority and general unsecured creditors. The ultimate outcome of claim objections and the pursuit and litigation of Trust Causes of Action is unknown. Further, it is unknown what, if any, recovery can be made from Trust Causes of Action. The Trustee continues investigating claim objections and the Trust Causes of Action with the goal of prosecuting or defending the same in a manner that is efficient, and which will bring the most cost effective results to the Estate and Beneficiaries of the Trust. The Trustee of the STM

Liquidating Trust will serve without a bond which might otherwise be available to satisfy covered claims against the Trustee.

CONFIRMATION OF THE PLAN

**Voting Procedures**

Ballots will be sent to holders of claims or interests in Classes 2 and 4 through 6, each of which may vote.  Holders of Claims and Interests entitled to vote should read the instructions carefully, complete, date and sign the ballot and transmit it in the envelope enclosed.

IN ORDER TO BE COUNTED, YOUR BALLOT AND ANY OBJECTION TO CONFIRMATION OF THE PLAN MUST BE RECEIVED AT THE INDICATED ADDRESS NO LATER THAN 4:30 P.M. MOUNTAIN DAYLIGHT TIME ON NOVEMBER 13, 2017. FAILURE TO VOTE OR A VOTE TO REJECT THE PLAN WILL NOT AFFECT THE TREATMENT TO BE ACCORDED A CLAIM OR INTEREST IF THE PLAN NEVERTHELESS IS CONFIRMED.

If more than one-half in number of claimants voting and at least two-thirds in amount of the allowed claims of such claimants in each class of claims vote to accept the Plan, such classes will be deemed to have accepted the Plan. If at least two-thirds in amount of the units voted in a class of equity interests are voted to accept the Plan, such class will be deemed to have accepted the Plan. For purposes of determining

AMENDED DISCLOSURE STATEMENT                                                          40

whether a class of claims or interests has accepted or rejected the Plan, only the votes of those who have timely returned their ballots will be considered.

## Hearing on Confirmation

The hearing on confirmation of the Plan has been set to be held on November 20, 2017, at 9:00 a.m. (Mountain Time), before the United States Bankruptcy Judge, at the Charles M. Pray Courtroom, 125 Central Avenue West, Great Falls, Montana. The Bankruptcy Court shall confirm the Plan at that hearing only if certain requirements, as set forth in Section 1129 of the Bankruptcy Code, are satisfied.

## Treatment of Dissenting Classes of Creditors

The Bankruptcy Code requires the Bankruptcy Court to find that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan. Upon such a finding, the Bankruptcy Court may confirm the Plan despite the objections of a dissenting class.

## Effect of Confirmation

Upon confirmation of the Plan, all property of the Debtor's Assets shall vest in the STM Liquidating Trust, free and clear of all claims and interests, except for a security and ownership interests asserted in funds turned over by Heartland Payment Systems, Inc., or as otherwise provided in the Plan or the Order of Confirmation. The provisions of the Plan shall bind the Debtor, the Trustee, the secured claimants, all

creditors of the Debtor, and any other party in interest, whether or not such creditor is impaired under the Plan and whether or not such creditor has accepted the Plan. The confirmation of the Plan shall be effective and binding and the provisions of the Plan shall be carried out without any requirement of compliance with non-bankruptcy law regarding limited companies or any other law governing the disposition of assets by companies.

Pursuant to 11 U.S.C. § 1141(d)(3), the Debtor will not receive a discharge.

## Fees and Quarterly Reports

The STM Liquidating Trust shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6).  After confirmation and until such time as a final decree closing the Case is entered, the STM Liquidating Trust shall file and serve on the U.S. Trustee a quarterly financial report for each quarter (or portion thereof) the case remains open.   The quarterly financial report shall include the following:

1. A statement of all disbursements made during the course of the three months, whether or not pursuant to the Plan; and

2. A summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distribution or transfers of property under the Plan.

AMENDED DISCLOSURE STATEMENT                                              42

After confirmation and until such time as the STM Liquidating Trust is terminated, the Liquidating Trustee shall serve on the Trust oversight committee quarterly financial reports including the following:

1. The status of all Trust Causes of Action;

2. A statement of all disbursements made during the course of the three months, whether or not pursuant to the pursuant to the terms of the Plan and the STM Liquidating Trust; and

3. A summary, by class, of amounts distributed or property transferred to each recipient under the Plan and STM Liquidating Trust, and an explanation of the failure to make any distribution or transfers of property under the Plan STM Liquidating Trust.

DATED this 6th day of October, 2017.

COTNER LAW, PLLC

/s/ *David B. Cotner*
David B. Cotner

DATSOPOULOS, MacDONALD & LIND, P.C.

/s/ *Trent N. Baker*
Trent N. Baker

*Attorneys for Trustee*