

**CONNER & MARR, PLLP**

Dennis Patrick Conner
Keith Douglas Marr
J.R. Conner
Attorneys at Law

520 Third Avenue North
P.O. Box 3028 ▪ Great Falls, MT ▪ 59403-3028
Telephone: (406) 727-3550 ▪ Fax: (406) 727-1640
Kitty Agostinelli, Legal Assistant
Clari Davis, Legal Assistant

August 11, 2020

Sent by U.S. Mail and Email: dcotner@cotnerlaw.com

David B. Cotner
COTNER LAW, PLLC
2700 Radio Way
Missoula, MT 59808

    RE:    *Foster v Conner*

Dear Dave,

This letter sets out deficiencies with Trustee Jeremiah Foster's ("Foster") responses to Dennis Conner's ("Conner") discovery requests about Resolute Commercial Services, LLC ("Resolute"); and requests a time to meet and confer.

**I.**    **Resolute**.

The Resolute discovery is relevant and likely to lead to admissible evidence because it proves the bias of Foster and his principal witness, Nicole Manos ("Manos"). It is also relevant and likely to lead to admissible evidence on claims Conner intends to make against you and Foster under the Barton doctrine and law in equity for attorney fees and other relief arising out of breaches of fiduciary duty including by: (1) filing adversary proceedings without having done adequate investigation to determine the legitimacy of the claims; (2) spending money in the debtor's estate on adversary proceedings not well grounded in law or in fact; (3) failing to terminate adversary proceedings after it became obvious claims were frivolous and without merit; and (4) wrongfully running up litigation expenses. These actions were not taken because of poor judgment. These result from actions directed by Foster from which he wrongfully profiteered by Resolute's involvement in the STM bankruptcy and adversary actions you filed. Foster is not disinterested in Resolute's involvement. His profiteering creates a disincentive for expeditiously closing the Estate and an incentive for the creative prosecution of baseless claims. The result is the financial bleeding of the Estate's creditors and unreasonable taxing of the STM Liquidating Trust's ("Trust") adversaries' time and money.

Foster's responses to discovery requests about Resolute are deficient. Request for Admission No. 1 asks Foster to admit: "YOU [defined to include persons acting on his behalf] hired Resolute to do work on behalf of the Chapter 11 Estate of SHOOT THE MOON, LLC ("STM")." Foster

David B. Cotner
RE:  *Foster v Conner*
August 11, 2020
Page 2

admits he used Resolute's services but fails to admit Resolute was hired by him or on his behalf. If he did not hire Resolute, who did? And under what authority?

Interrogatory No. 3 asks Foster to identify all Resolute employees who did work for STM and what Resolute was paying them. Foster does not answer the question but claims he was not compensated for any assistance provided him in performing his duties. Foster was making a financial killing, as evidenced by the testimony of Manos. This question relates to the magnitude of the conflict and breach of fiduciary duties.

Interrogatory No. 4 asks Foster to identify all Resolute executives and employees who did work for the Trust by name; position held within Resolute, and their rate of salary or wage. This is the same information the US Trustee was seeking by subpoena and relates to the magnitude of the conflict and breach of fiduciary duties.

Request for Production No. 84 asks Foster to produce all documents relating to the terms under which he hired Resolute to do work on behalf of STM, including rates of compensation. Foster produced nothing. There must be an employment agreement and this request is not satisfied by production of a rate schedule like those produced in response to Request for Production No. 85.

Request for Production No. 85 asks Foster to produce all documents relating to the terms under which he hired Resolute to do work on behalf of the Trust, including rates of compensation. There must be an employment agreement and this request is not satisfied by production of a rate schedule bates stamped STM004284 and STM004285.

Request for Production No. 86 asks Foster to produce all Resolute time records and billing invoices for work done by its executives and employees for STM. None are produced.

Interrogatory No. 6 asks Foster to identify all Resolute executives and employees who did work on behalf of the STM or Liquidating Trust in pursuing the adversary claim against Conner by name, position, rate of salary or wage, and amount Resolute billed STM or its Liquidating Trust for work done in pursuing the adversary claim against Conner. Foster only identifies the generalized rates of compensation Resolute was charging pre-and post you giving it a raise in compensation.

Interrogatory No. 7 asks Foster if Resolute billed STM or its Trust for work done by Foster and, if so, to identify the dates of work, time spent, nature of the work done, and the amounts billed. Curiously, Foster never gives a direct answer and instead responds: "Resolute Commercial Services, LLC was not compensated for any assistance provided to the Trustee in performing his duties as the Chapter 11 Trustee." This is a nonsensical answer. The truth can be discovered by production of billing and payment records and an accounting thereof.

Will Foster provide a full and complete response to the discovery addressed above?

David B. Cotner
RE: *Foster v Conner*
August 11, 2020
Page 3

## II. Tax Returns.

In response to Interrogatory No. 8 and Requests for Production Nos. 89-90, Foster identified and produced tax returns for STM, related STM entities, and the Trust going back to 2014. He failed, however, to produce returns bearing his signature or the signature of the return's preparer.

Just as to STMXR, going back to the 2014 returns, will Foster please produce the signed returns?

## III. Balance Sheet Test.

Manos opines that STMXR was balance sheet insolvent on August 6, 2014. According to her, STMXR had only $86,017.20 cash on August 6, 2014. STMXR's true cash balance, as evidenced by its QuickBooks files, bank statements, and reconciliation statements, was $221,626.61 at the close of business on August 6, 2014. Funds cannot be transferred unless there is money to transfer. No checks deposited into the STMXR account were returned for insufficient funds, nor were any intercompany transfers voided for insufficient funds that would affect the $221,626.61 balance. The balance was what it was – no more no less. In Requests for Admission Nos 5, 7, and 8, Foster admits STMXR had a cash balance of $231,017.20 at the close of business on August 6, 2014; that all checks deposited that accounted for this balance cleared and were never returned for insufficient funds; and that all intercompany transactions deposited into the account were never voided or returned for insufficient funds. Despite this, Foster had you file a signed complaint alleging STMXR "was insolvent … or became insolvent" because of the transfer of the Bank Property to Conner on August 6, 2014. See ¶ 38 of Foster's Amended Complaint. Foster, Manos, and you know that STMXR only held two assets, the real estate on 10th Avenue South in Great Falls, Montana, where the Sonic Drive-In was located, and the Bank Property in the Marketplace. Using imaginary accounting, Manos looks at unrelated entities and uses transactions not involving the STMXR account to arrive at the conclusion STMXR was insolvent on August 6, 2014. Foster needs to better explain the methodology Manos used and fulfill his obligation under Federal Rule of Evidence 1006 to prove the content of Manos' chart.

To resolve discovery disputes about the balance sheet test, will Foster provide a full and complete response to Interrogatory No. 10?

Assuming Foster will not agree to Conner's above requests, will you please give me a time this week to meet and confer to see if we can resolve any outstanding disagreements before Conner moves the Federal District Court to compel answers to the above matters?

Sincerely yours,

Keith D. Marr